## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IRENN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-00141 |
| | ) | |
| v. | ) | Honorable Ruben Castillo |
| | ) | |
| ORKIN, LLC; ORKIN PEST CONTROL; | ) | Magistrate Judge Nan R. Nolan |
| ORKIN EXTERMINATING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ENTRY OF DEFAULT AND FOR LEAVE TO FILE MOTION TO DISMISS AND TO COMPEL ARBITRATION

### I.     INTRODUCTION

On April 16, 2012, Plaintiff filed a Motion for Entry of Default Judgment, but in so doing, failed to adhere to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("Rule 55(b)(2)") by timely notifying Defendants or their counsel of his motion, and noticing his motion for a hearing.  Three days later, on April 19, 2012, the Court entered a default ("the default") against Defendants and notified the undersigned counsel, who Plaintiff identified in his motion.

In addition to the procedural deficiencies with Plaintiff's motion, Defendants have good cause for their failure to respond to the Complaint under Rule 55(c) of the Federal Rules of Civil Procedure ("Rule 55(c)").  Orkin's local Human Resources staff ("the staff") understood that Plaintiff improperly caused the Summons and Complaint to be served on Orkin's Waukegan, Illinois location solely by mail, which standing alone, is not proper service under Rule 4 of the Federal Rules of Civil Procedure or Illinois law, 735 ILL. COMP. STAT. 5/2-202 (2011).  It was not until April 20, 2012, the day after the entry of default, that Orkin identified its staff's good faith mistake regarding service, which apparently included in-person service of the Summons and Complaint by Plaintiff's non-resident wife.  The staff's lay-person misunderstanding of the

manner of service was not willful, and constitutes good cause to vacate the default.

Good cause also exists because Defendants have moved quickly to correct the default by formally appearing within five days thereof and filing this Motion within eight business days. As such, vacating the default will not prejudice Plaintiff.

In addition, Defendants have significant meritorious defenses to the Complaint. First, of the three Defendants, Orkin, LLC is the only legal entity in existence and the only proper Defendant. Second, the entirety of Plaintiff's Complaint is subject to mandatory arbitration in accordance with Plaintiff's arbitration agreements executed with and on behalf of Orkin, as well as with Orkin's Dispute Resolution Policy. As a result, this meritorious defense is well grounded in law and fact under Rules 12(b)(1) and 60(b)(4) of the Federal Rules of Civil Procedure, as well as the Federal Arbitration Act. Third, the Illinois Department of Human Rights' dismissal of Plaintiff's underlying discrimination claims details Defendants' meritorious defenses by including numerous admissions by Plaintiff that belie his spurious allegations and support Defendants' defenses.

## II. PLAINTIFF'S MOTION FOR DEFAULT WAS PROCEDURALLY DEFICIENT

Plaintiff filed his underlying charge of discrimination in 2005 – over six years ago. ECF No. 1, Ex. A. Since that time, Plaintiff and the undersigned have exchanged numerous correspondence and telephone conversations, including as recently as March 17 and 19, 2012. *See* **Ex. A**, attached hereto. At the March 22, 2012 status hearing, one of Defendants' counsel, Daniel O. Canales, personally appeared on behalf of Defendants and informed the Court that Defendants did not believe that Plaintiff had properly served them with the Summons and Complaint. As such, the Court scheduled a settlement conference for the parties to appear, and ordered Plaintiff to "file the return of service if the defendants have been served." ECF No. 8.

Plaintiff did not do so until April 16, 2012, the same day Plaintiff filed his Motion for Default

Judgment, which the Court entered three days later on April 19, 2012. ECF Nos. 9-13.

Rule 55(b)(2) provides, in relevant part, that Plaintiff:

> [M]ust apply to the court for a default judgment. . . If a party against whom a
> default judgment is sought has appeared personally or by a representative, that
> party or its representative *must be served with written notice of the application at
> least 7 days before the hearing*.

FED. R. CIV. P. 55(b)(2) (emphasis added).

Defendants, through their counsel, have repeatedly exchanged correspondence and

telephone calls with Plaintiff before and after he filed the Complaint, engaged in settlement

discussions with Plaintiff and the Equal Employment Opportunity Commission ("EEOC"), and

even personally appeared at the most recent status hearing.  As a result, Defendants' conduct

constitutes an "appearance" as contemplated by Rule 55(b)(2). *See, e.g., Mandelli v. Hollando*,

No. 93C2723, 1994 WL 457245, at * 2 (N.D. Ill. Aug. 19, 1994) ("Although [defendant] had not

yet filed a formal appearance as of the finding of default, counsel's statements in court that he

represented her and his statements on her behalf constitute an appearance under Rule 55(b)(2);"

setting aside default on other grounds)[1]; *see also Zuelzke v. Anderson Die Casting, Inc.*, 925 F.2d

226, 230 (7th Cir. 1991) (a party has "appeared" for purposes of Rule 55(b)(2) where they have

"made some presentation" to the district court in the pending action).

Plaintiff failed to provide Defendants or their counsel with "at least 7 days" notice of his

motion as required by Rule 55(b)(2).  Rather, the undersigned did not receive Plaintiff's motion

until April 19, 2012, three days after it was filed, by which time the Court had already entered

the default.  Indeed, Plaintiff did not even notice the motion for a hearing as contemplated by

Rule 55(b)(2). *See Mandelli*, 1994 WL 457245, at *2 ("The Seventh Circuit has stated that

---

[1] Pursuant to this Court's standing order, all Westlaw cases cited herein are attached hereto as **Group Exhibit I**.

'Failure to provide [Rule 55(b)(2) notice] is a serious procedural error, and absent special circumstances the lack of notice requires that the default be set aside.'") (citation omitted). Because Plaintiff's April 16, 2012 motion did not comply with Rule 55(b)(2), Defendants respectfully request that this Court vacate the April 19, 2012 default. [2]

## III.    GOOD CAUSE EXISTS TO VACATE THE DEFAULT AGAINST DEFENDANTS

Even if Plaintiff's motion for default was proper, good cause exists to vacate the default under Rule 55(c) of the Federal Rules of Civil Procedure ("Rule 55(c)").  FED. R. CIV. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).").  A default, "like a dismissal, is a harsh sanction which should usually be employed only in extreme situations, or when less drastic sanctions have proven unavailing. . . . Moreover, this circuit has a well-established policy of favoring a trial on the merits over a default judgment." *Christiansen v. Adams*, 251 F.R.D. 358, 360 (S.D. Ill. 2008) (citations omitted).

Defendant's Motion is brought under Rule 55(c), as the Court's April 19, 2012 order was an entry of default, not a default judgment.  ECF No. 13.  The test for vacating an entry of default under Rule 55(c) is the same as the test for vacating a default judgment under Rule 60(b), but the former is applied more liberally. *U.S. v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989). "In order to vacate an entry of default the moving party must show: (1) good cause for default[;] (2) quick action to correct it[;] and (3) meritorious defense to plaintiff's complaint." *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994).  As explained below, Defendants satisfy all of the elements required to vacate the default.

---

[2] Notably, the Court's order entering the default encouraged the parties to "exhaust all settlement possibilities." ECF No. 13.  Through the EEOC, Orkin engaged in good faith settlement discussions with Plaintiff for over an entire year.  In fact, the parties agreed in principle on a settlement amount with the EEOC, but Plaintiff later reneged and then demanded nearly twenty times more without any basis in fact (or law).  Now, the Complaint seeks damages that are even exponentially more – $1,075,595.00 no less.  ECF No. 1, p. 3.

**A.** **Orkin's staff made a good faith mistake as to the manner of service, which inadvertently caused Orkin's untimely response to the Complaint and constitutes good cause.**

Borrowing from Rule 60(b) of the Federal Rules of Evidence, Rule 55(c) permits a court to relieve a party from an entry of default for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the [entry of default]." FED. R. CIV. P. 60(b); *see also* FED. R. CIV. P. 55(c); *Christiansen*, 251 F.R.D. at 360 ("in the absence of a showing of willfulness, courts in the Seventh Circuit are more likely than not to set aside an entry of default or even vacate a default judgment.").

Good cause is shown where parties, particularly lay-persons, mistakenly fail to understand the significance of nuanced legal issues, such as identifying the manner of service and types of legal documents. For example, in *Christiansen*, the defendant employee's "misinterpretation of the Illinois scheme for representation" constituted good cause for his failure to timely enter his appearance and respond to the Complaint. 251 F.R.D. at 360; *see also Bieganek v. Taylor*, 801 F.2d 879, 882 (7th Cir. 1986) (reversing district court's refusal to vacate default judgment where evidence did not show defendant deliberately and willfully disregarded the litigation).

Here, Orkin's Human Resources staff ("the staff") understood that Plaintiff caused the Summons and Complaint to be served on Orkin's Waukegan, Illinois location solely by mail, which standing alone, is not proper service under Rule 4 of the Federal Rules of Civil Procedure. *See* Ehlers Decl. ¶¶ 3-6, attached hereto as **Ex. B**; Fuss Decl. ¶¶ 4, 6, attached hereto as **Ex. C**; FED. R. CIV. P. 4; *Walton v. Lyons,* 962 F. Supp. 126, 128 (C.D. Ill. 1997) ("The defendant's objection to inadequate service of process is well founded. The Federal Rules of Civil Procedure do not permit service of the summons and complaint by first class, or even certified mail.");

5

*Audio Enterprises, Inc. v. B&W Loudspeakers of Am.*, 957 F.2d 406, 408 n. 2 (7th Cir. 1997) ("actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process.") (quoting *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1992)); *see also* 735 ILCS 5/2-202 (2011); *Gocheff v. Breeding*, 53 Ill. App. 3d 608, 609-10, 368 N.E.2d 982, 983 (5th Dist. 1977) (reversing judgment against defendant for inadequate service of summons).[3]

The staff relayed their misunderstanding of the manner of service to Orkin's counsel, and thereafter, Orkin's counsel personally appeared at the March 22, 2012 status hearing and informed the Court that Orkin did not believe Plaintiff had properly served it with the Summons and Complaint. Ehlers Decl. ¶¶ 5-6, Ex. B; Fuss Decl. ¶ 6, Ex. C. As such, the Court ordered Plaintiff to "file the return of service if the defendants have been served." ECF No. 8. Plaintiff did not do so until April 16, the day Plaintiff filed his motion for default judgment, which the Court entered on April 19.

On April 20, the day after the default, Orkin first identified its staff's good faith misunderstanding regarding service, which apparently also included personal service of the Summons and Complaint by Plaintiff's wife. Fuss Decl. ¶ 3, Ex. C; ECF No. 12, Ex. A. Because of the staff's mistake as to the manner of service, Orkin inadvertently failed to timely respond to the Complaint. Ehlers Decl. ¶ 5, Ex. B. Neither Orkin's staff nor its counsel intended to willfully disregard proper service of the Summons and Complaint. Ehlers Decl. ¶¶ 6-7, Ex. B; Fuss Decl. ¶ 5, Ex. C; *see, e.g., Christiansen*, 251 F.R.D. at 360 ("in the absence of a showing of willfulness, courts in the Seventh Circuit are more likely than not to set aside an entry of default or even vacate a default judgment."). Rather, as in *Christiansen* and *Bieganek*, the staff's

---

[3] Plaintiff's mailing of the Summons and Complaint to Orkin's corporate headquarters in Atlanta, Georgia and the undersigned also does not constitute proper service. *See* ECF No. 12, pp. 9, 12, Exs. B, C.

lay-person misunderstanding as to the manner of service was not deliberate, but rather a good faith mistake, inadvertence, and excusable neglect, all of which constitute good cause to vacate the default, particularly under the more liberal standards of Rule 55(c). Ehlers Decl. ¶ 7, Ex. B; Fuss Decl. ¶ 5, Ex. C; *see, e.g., Bluegrass Marine, Inc. v. Galena Road Gravel, Inc.*, 211 F.R.D. 356 (S.D. Ill. 2002) (vacating entry of default; although defendant made only a "very weak" showing of good cause, he made a quick response and meritorious defense); *see also Tate v. Riverboat Servs., Inc.*, 305 F. Supp. 2d 916, 920 (N.D. Ind. 2004) (vacating default judgment under Rule 60(b)(1); evaluating factors for excusable neglect, including: defendant's reason for neglect, impact of neglect on judicial proceedings, prejudice to plaintiff, and whether defendant acted in good faith) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

###    B.    Orkin has quickly moved to correct the entry of default.

"Where there has been good cause for delay, and there has been no prejudice to the other party, the Seventh Circuit has upheld a ten-week delay as sufficiently quick to warrant vacating a default judgment." *Bluegrass Marine*, 211 F.R.D. at 359 (vacating entry of default where defendant filed motion twelve days after the entry of default) (citing *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792 (7th Cir. 1980)); *see also Allen Russell Publ'g*, *Inc. v. Levy*, 109 F.R.D. 315, 319 (N.D. Ill. 1985) (vacating entry of default on defendant's motion filed nine weeks after entry of default).

Here, Defendants have formally appeared within five days of the default, and filed their Motion within eight business days, which clearly satisfies the second element to vacate the default under Rule 55(c). Notably, vacating the default will also not prejudice Plaintiff as the case was only recently filed earlier this year on January 9, 2012. As such, there has been no

spoliation of evidence, no increased burden regarding the discovery process and no other prejudice associated with the filing of this motion. *See, e.g., Pioneer*, 507 U.S. at 395 (considering prejudice to plaintiff in determining excusable neglect); *Greaves v. Burke*, 121 B.R. 234, 236-37 (N.D. Ill. 1990) (considering prejudice against plaintiff); *New Field Int'l Sales, Inc. v. Salem*, 116 F.R.D. 215, 216 (N.D. Ill. 1986) (vacating entry of default, in part, because prejudice against plaintiff was slight, particularly given that the case was pending on the docket only a "short period of time").

## C. Defendants' have meritorious defenses to the Complaint.

"A 'meritorious defense' is not necessarily a winning one, but it is one which is 'supported by a developed legal and factual basis.'" *Bluegrass Marine*, 211 F.R.D. at 357 (citations omitted). *See also Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) (meritorious defense need not be one that will definitely succeed); *Levy*, 109 F.R.D. at 319 ("the uniform rule is that a defense is meritorious when the 'allegations of defendant's answer, if established at trial, would constitute a complete defense to the action.").

### 1. Only Orkin, LLC is a proper Defendant.

Of the three Defendants, Orkin, LLC is the only legal entity in existence and therefore, the only proper Defendant. As such, Defendants "Orkin Pest Control" and "Orkin Exterminating, Inc." plainly have meritorious defenses as they are not legal entities and were not Plaintiff's employer. Indeed, the Equal Employment Opportunity Commission's Determination was only against "Orkin, LLC." ECF No. 1, Ex. B.

##### 2.      The Complaint is subject to dismissal and mandatory arbitration.[4]

The Federal Arbitration Act ("FAA") allows Orkin to petition the district court to compel arbitration in the manner provided for in its arbitration agreements and policy with Plaintiff. *See* 9 U.S.C. § 4. Congress intended this remedy "to overcome judicial resistance to arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Further, Congress declared "'a national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston v. Ferrer,* 552 U.S. 346, 353 (2008) (citation omitted). Thus, Congress has provided that arbitration agreements in contracts involving commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. In order to compel Plaintiff to arbitrate his claims, this Court must determine whether: (1) there is an enforceable agreement to arbitrate; (2) the claims fall within the scope of the agreement; and (3) there has not been a waiver of the agreement. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24-34 (1991); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). All of these requirements are met here.

##### a.      Plaintiff's arbitration agreements and Orkin's DRP policy cover all of the claims contained in the Complaint.

The entirety of the Complaint is subject to mandatory arbitration in accordance with Plaintiff's two arbitration agreements executed with and on behalf Orkin, as well as with Orkin's Dispute Resolution Policy ("DRP").[5] Plaintiff's April 21, 2005 "Agreement to Arbitrate" states,

---

[4] Given the space limitations of this Motion, and the comparatively limited requirements for establishing a meritorious defense under Rule 55(c), Defendants do not attempt to set forth all of the legal and factual support necessary for granting a motion to dismiss and to compel arbitration. Rather, the relief sought in this Motion includes leave to subsequently file a more robust motion to dismiss and to compel arbitration.

[5] Plaintiff refers to but does not attach his arbitration agreements or Orkin's policy to the Complaint. Pursuant to FED. R. CIV. P. 10(c), "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to her claim." *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993). In so doing, a defendant's motion to dismiss under Fed. R. Civ. P. 12(b) is not converted into a motion for summary judgment under FED R. CIV. P. 56. *Id.*; *Steigmann v. Democratic Party of Ill.*, 406 F. Supp. 2d 975, 986 (N.D. Ill. 2005). "[W]ere it not for the exception, the plaintiff could evade dismissal under [Rule 12(b)] simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002).

9

in relevant part:

> Therefore, in consideration of employment and the mutual promises, covenants and conditions set forth in this Agreement, I agree, as does the Company, to abide by the Company's Dispute Resolution Policy and to arbitrate **any** dispute, claim or controversy regarding or arising out of my employment (as defined by the Company's Policy . . . ) that may arise between me and the Company, its parents, subsidiaries, affiliates and any other persons or entities acting as its agents.

**Ex. D**, ¶ 2, attached hereto.

Executed on the same day as the April 21, 2005 "Agreement to Arbitrate," Plaintiff's "Employment Agreement" with Orkin's parent company, Rollins, Inc., states in relevant part, that Plaintiff:

> consents and agrees to submit to binding arbitration with the American Arbitration Association located in Atlanta Georgia . . ., which shall be the sole and exclusive forum for resolving any disputes . . . relating to the employment relationship between Employee and Rollins."

**Ex. E**, ¶ 5, attached hereto.

In addition, Defendant's February 15, 2005 DRP states: "All parties are required to use this [dispute resolution] process exclusively, rather than more formal court litigation, so the merits of such disputes are more promptly and efficiently resolved." **Ex. F**, Section I. The DRP also provides that it is applicable to "disputes" further defined as,

> (1) all claims, actions or suits arising out of or in connection with any applicant's application for employment and the Company's actions with respect to that application, and (2) all claims, actions or suits arising out of or in connection with any employee's employment, including but not limited to the terms and conditions of any employee's employment and the termination or cessation of that employment.

Ex. F, Section II.A. The DRP clearly includes any and all Title VII claims such as those at issue in the Complaint. Ex. F, Sections IV.B. and VI.B.

The Complaint alleges violations of Title VII based on Defendant's alleged delay in hiring Plaintiff because of his race, Defendants' discharge of Plaintiff related to his alleged

protected activity and his race, and alleged retaliation based on the contents of Orkin's arbitration policy.  ECF No. 1.  Plaintiff's arbitration agreements state that the duty to arbitrate covers all disputes between the Plaintiff and Orkin, including those related to all employment application and discharge issues contained in the Complaint.  Exs. D, E.  Likewise, the DRP clearly defines arbitral disputes as those related to the employment application process and decisions, the terms and conditions of Plaintiff's employment and the discharge of his employment.  Ex. F, Section II.A.  Because Plaintiff's causes of action concern his hire and the termination of his employment with Defendant, his claims fall squarely within the scope of his arbitration agreements and the related DRP. *See, e.g., Tinder*, 305 F.3d at 733; *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 635-36 (7th Cir. 1999); *Koveleskie v. SBS Capital Markets, Inc.*, 167 F.3d 361, 363-64 (7th Cir. 1999).

> **b.**     **Plaintiff's arbitration agreements and Defendants' ADR policy are enforceable.**

As the court in *Tinder* explained, "[t]he FAA mandates enforcement of valid, written arbitration agreements. . . . We evaluate agreements to arbitrate under the same standards as any other contract. . . . Whether a binding arbitration agreement exists is determined under the principles of state contract law." 305 F.3d at 734 (citations omitted).  As it relates to Plaintiff, Illinois contract law governs his agreements and the DRP.

In *Melena v. Anheuser-Busch, Inc.*, the Supreme Court of Illinois determined that mandatory arbitration agreements in the employment context are enforceable contracts under Illinois law:

> In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract.  We believe that [defendant's] introduction of the Dispute Resolution Program, its mailing of material related to the program to its employees, constitutes [defendant's] "offer."   By continuing her employment with [defendant], plaintiff both accepted the offer and provided the necessary

consideration. . . . Under these facts, the agreement to arbitrate covered claims arising from the employment relationship is enforceable.

219 Ill.2d 135, 151-52, 847 N.E.2d 99, 109 (2006) (citations omitted).[6]

Here, there is not just one, but two enforceable agreements to arbitrate; one in the form of an Employment Agreement and the other in the form of a more specific "Agreement to Arbitrate," both of which were executed by the Plaintiff at the onset of his employment with Defendant. Exhibits D, E. Both agreements were entered as conditions of Plaintiff's employment, as was the DRP. Such mutual promises to arbitrate disputes provide consideration for the contracts. *See, e.g., Johnson v. Travelers Prop. Cas.,* 56 F. Supp. 2d 1025, 1026-1027 (N.D. Ill. 1999).

### c.    Orkin has not waived its right to arbitrate the Complaint.

Upon leave of this Court, any motion by Defendants to dismiss the Complaint under Rules 60(b)(4) and 12(b)(1) of the Federal Rules of Civil Procedure, as well as the FAA, will be timely. Defendant's was not required to compel arbitration during the EEOC or IDHR administrative processes, as "[p]articipating in EEOC proceedings is not inconsistent with the right to arbitrate." *Medina v. Hispanic Broad. Corp.,* No. 99421, 2002 WL 389628, at *4 (N.D. Ill. Mar. 12, 2002). Indeed, such an effort would have been fruitless. *EEOC v. Ralphs Grocery Co.*, 300 F. Supp. 2d 637, 639-40 (N.D. Ill. 2004) (denying employer's attempt to enjoin the EEOC and state agency from investigating employee's charge pursuant to an arbitration policy;

---

[6] Notably, the court in *Melena* also rejected the position that because the agreement was offered on a "take-it-or-leave-it" basis, it was unenforceable. *Id*., at 109-110 (noting "the futility surrounding arguments grounded in the doctrine of unconscionability," and explaining that "Illinois courts have been reluctant to hold that inequality in bargaining power alone suffices to invalidate an otherwise enforceable agreement."); *see Tinder*, 305 F.3d at 736 ("an employer's promise to continue employing an at-will employee could constitute consideration for an employee's promise to forego certain rights."); *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 929 (N.D. Ill. 2005) ("The fact that employer has agreed to be bound by the outcome of the arbitration is enough, in the Seventh Circuit, to defeat allegations that the agreement in question is invalid due to a lack of consideration").

preventing agencies' investigations "would have the effect of making [charges] meaningless, as the agencies would be powerless to do anything about them").

### d. The Court should dismiss the Complaint in lieu of a stay.

In *Tice v. American Airlines, Inc.,* the Seventh Circuit held, "[d]istrict courts should retain jurisdiction over a suit that must be interrupted for reference of an issue to another forum rather than dismiss it *if, should it be dismissed, there might later be grounds for reinstating it*." 288 F.3d 313, 318 (7th Cir. 2002) (emphasis added). Many courts have relied on this premise, reasoning that dismissal of an arbitral action is appropriate when retaining jurisdiction would be fruitless. *Deputy v. Lehman Bros., Inc.*, 374 F. Supp. 2d 695, 711 (E.D. Wis. 2005); *Tupper v. Bally Total Fitness Holding Corp.*, 186 F. Supp. 2d 981, 992-93 (E.D. Wisc. 2002); *Walldbillig v. SSC Germantown Operating Co. LLC,* No. 08C1002, 2010 WL 1688535, at *9-*10 (E.D. Wisc. April 26, 2010); *Breeden v. Delta Faucet Co.,* No. 09CV0913-DFH-TAB, 2009 WL 3487494 (S.D. Ind. August 25, 2009); *Drewery v. Gen. Elec. Consumer and Indus*., No. 06CV220, 2006 WL 2228963, at *2 n. 3, *9 (N.D. Ind. Aug 3, 2006) (distinguishing *Tice* because "the arbitration agreement barred plaintiff's suit altogether, not just in part . . . Thus, a motion to stay pursuant to 9 U.S.C. § 3 would not be applicable."). As such, where as here, all of the Plaintiff's claims are subject to resolution through the arbitration agreements and policy, and may not be reinstated in court, retaining jurisdiction and staying the action would serve no purpose.

For the above reasons, as well as those forthcoming in Defendants' motion to dismiss and to compel arbitration, Defendants respectfully request that this Court vacate the default, dismiss Plaintiff's Complaint in its entirety and thus, compel Plaintiff to submit his claims to arbitration

if he so chooses. [7]

3.    **The EEOC's and Illinois Department of Human Rights' dismissal of Plaintiff's underlying claims identifies Defendants' meritorious defenses.**

As stated in Plaintiff's original charge of discrimination, Plaintiff alleges that Orkin discriminated against him based on his race and in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended. ECF No. 1, Ex. A. After nearly five years of investigation, the EEOC issued its "Determination" regarding Plaintiff's charge on August 19, 2010. ECF No. 1, Ex. B. Notably, instead of making a finding regarding Plaintiff's allegations regarding Orkin's discriminatory conduct, the EEOC *sua sponte* based its Determination solely on Orkin's "mandatory arbitration policy," which as explained above, is enforceable and the basis for a motion to dismiss and compel arbitration. ECF No. 1, Ex. B.

On or about November 22, 2010, the Illinois Department of Human Rights ("IDHR") subsequently began its investigation of Plaintiff' charge. ECF No. 1, Ex. A. Nearly one year later, on November 2, 2011, the IDHR issued its Notice of Dismissal for Lack of Substantial Evidence, which included its "Investigation Report," both of which are attached hereto as **Ex. H**. As to Orkin's alleged failure to hire Plaintiff based on race (Count A), the IDHR found, among other things, that: no evidence of pretext existed; Orkin hired other employees within Plaintiff's protected class (including Plaintiff); and no racial animus existed. Ex. H, p. 4. As to Orkin's alleged failure to train Plaintiff based on his race (Count B), the IDHR found, among other things, that: Plaintiff received the standard ten-day training (as well as an extra day of training); no similarly situated employees outside of Plaintiff's protected class were treated (or trained) better than Plaintiff; and no racial animus existed. Ex. H, p. 6. As to Orkin's alleged racially

---

[7] Out of an abundance of caution, and without waiving their rights, Defendants attach hereto as **Ex. G** their Answer and Defenses solely to the extent this Court denies Defendants leave to file a motion to dismiss and to compel arbitration.

discriminatory and retaliatory termination of Plaintiff's employment (Counts C and D), the IDHR found, among other things, that: Orkin's work is seasonal; sales at Plaintiff's location decreased in August of 2005; Orkin laid off the least senior employees at Plaintiff's location, including Plaintiff and another employee not in Plaintiff's protected class who did not engage in protected activity; Plaintiff was eligible for rehire; and no racial or retaliatory animus existed. Ex. H, p. 10. The above factual and legal conclusions by the IDHR demonstrate that Defendants maintain very meritorious defenses to the Complaint, and for this additional reason, Defendants respectfully request that the Court vacate the default against them.

## V.  CONCLUSION

For the reasons set forth above, Defendants Orkin, LLC, Orkin Pest Control, and Orkin Exterminating, Inc. respectfully request that the Court grant the Motion, vacate the April 19, 2012 entry of default against them, and grant Defendants leave to file a motion to dismiss and to compel arbitration.

DATED:  April 30, 2012.

Jon M. Gumbel (*appearing pro hac vice*)
GA Bar No. 315195
jon.gumbel@ogletreedeakins.com
**OGLETREE, DEAKINS, NASH,**
  **SMOAK & STEWART, P.C.**
191 Peachtree Street, Suite 4800
Atlanta, Georgia 30303
Office (404) 881-1300

Daniel O. Canales
ARDC No. 6296027
daniel.canales@ogletreedeakins.com
**OGLETREE, DEAKINS, NASH,**
  **SMOAK & STEWART, P.C.**
155 N. Wacker Dr., Suite 4300
Chicago, Illinois 60606
Office (312) 558-1422

*Attorneys for Defendants*

Respectfully submitted,

DEFENDANTS ORKIN, LLC; ORKIN
PEST CONTROL; ORKIN
EXTERMINATING, INC.


By:  /s/ Jon M. Gumbel                              
    One of Their Attorneys

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on April 30, 2012, the foregoing *Memorandum of Law in Support of Motion to Vacate Entry of Default and for Leave to File Motion to Dismiss and to Compel Arbitration* was filed electronically with the Clerk of Court using the ECF system, which will automatically send e-mail notification of such filing to the following party:

Mr. Irenn Johnson, *Pro Se*
7017 60th Avenue #101
Kenosha, WI 53142
irenn.johnson@gmail.com

        /s/ Jon M. Gumbel
        One of Defendants' Attorneys

12276369.1 (OGLETREE)