**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IRENN H. JOHNSON        )
Plaintiff,              )
                      )
v.                    )      Civil Action No.: 12-CV-00141
                      )          Judge Ruben Castillo
ORKIN, LLC; ORKIN PEST CONTROL; )
ORKIN EXTERMINATING, INC    )
Defendant.

---

### MOTION IN OPPOSITION TO VACATE DEFAULT ENTRY AND TO DISMISS AND TO COMPEL ARBITRATION AND MOTION FOR FINAL JUDGMENT

COMES NOW, I, Irenn H. Johnson, Plaintiff, and pursuant Rule 55 and Rule 60 of the Federal Rules of Civil Procedure respectfully request the court to deny the Defendant's Motion To Vacate Entry of Default and For Leave To File Motion To Dismiss and To Compel Arbitration on the grounds that without regard to whether or not the default entered by the court constitutes a " default judgment" or "entry of default," the Defendant has not presented a sufficient basis to vacate the default order under Rule 55(c) or Rule 60(b) of the Federal Rules of Civil Procedure. Pursuant Title VII of the Civil Rights Act (as amended), and the Illinois Human Rights Act I hereby request the court to enter a judgment for the total damages as set forth in the complaint and whatever relief the court determines as appropriate.

In support of this motion, I, Irenn H. Johnson, Plaintiff, first being, duly sworn states under the oath the following as true and correct.

**UNDISPUTED FACTS**

1.      On March 7, 2005, I completed an employment application with the Defendant, who has over 500 employees, and was interviewed by Mark Fuss ("Fuss"), Regional Sales Manager and Call Center Manager on March 9. He offered me a position contingent the results of a background check, physical, and drug test. Due to the inherent financial volatile nature of the business, I expressed concerns

regarding being terminated or laid off during slow periods. Not only did Fuss state that he had not terminated any employees in 5 1/2 years for these reasons, but went on to say that he had in fact promoted 2 employees. See **Exhibit 1**. On said date, I completed the pre-employment requirements.

2.     On March 15, 2005, Shawn Allen, notified Fuss that the results of my criminal background check was outside company policy. See **Exhibit 2.** The criminal background investigation indicated that I had been arrested for criminal trespass to land. I was never convicted of this charge.

3.     On March 18, 2005, Fuss rescinded the job offer. The reason that he gave me involved hours of availability. On said date, I hand-delivered a written request for my pre-employment records. See **Exhibit 3**.

4.     On April 4, 2005, I was re-offered employment contingent upon physical results. The very next day, I was notified that medical results were completed.

5.     On April 21, 2005, I started employment. On said date, Melanie Watkins and Larry Black prohibited me from modifying the arbitration agreement with the threat of termination.

6.     On April 25, 2005, I submitted a written request for my employment records. See **Exhibit 4**.

7.     On June 8, 2005, I submitted a written complaint opposing discrimination and violation of the Illinois Personnel Record Review Act. See **Exhibit 5**.

8.     On August 31, 2005, I was terminated.

9.     Between September 1, 2005 and January 8, 2012, all conciliation efforts have failed and applicable administrative remedies were exhausted. See **Exhibit 6**.

10.    On January 9, 2012, I filed a complaint alleging violations of Title VII of the Civil Rights Act (as amended) and the Illinois Human Rights Act in the US District Court Northern District of Illinois.

11.    On January 20, 2012, the Defendant received a request for waiver of summons and complaint as evident by certified mail return receipt hereto and marked as **Exhibit 7**.

12.    On March 17, 2012, I unofficially notified the counsel for the Defendant of the pending Status

Conference requesting that they advise their "client or former client" accordingly. See **Exhibit 8**.

13.     On March 19, 2012, the Defendant's counsel responded stating that "Orkin was not a proper party to [my] lawsuit" and that they were "not authorized" to accept service of process. See **Exhibit 9**. On said date, a summons was issued.

14.     On March 21, 2012, a copy of the summons and complaint was personally served on Fuss. He scanned the papers and sent them via e-mail to Ms. Meribetth Ehlers ("Ehlers"), Midwest Division Human Resources Manager <u>Fuss Decl. Para. 6.</u> On the same day, Ehlers had the documents sent to Jefferson Blandford ("Blandford"), Orkin/ Rollins' in-house legal counsel. Blandford made an inquiry as to the delivery of the documents and Ehlers replied to the inquiry <u>Ehlers Decl. para 5</u>. Also on said date, a copy of the summons and complaint were served certified mail to the Defendant's counsel and received on March 27, 2012. See **Exhibit 10**.

15.     On March 22, 2012, the court held a Status Conference where the counsel for the Defendant appeared informally out of "courtesy" stating that they were not authorized to accept service of process.

16.     On April 19, 2012, the court entered an Entry of Default.

17.     On April 27, 2012, the Defendant moved to vacate default and to dismiss.

**POINTS AND AUTHORITIES**

18.     Rule 55(c) of the Federal Rules of Civil Procedure provides for relief from entries of default, whereas Rule 60(b) provides for relief from judgments by default. See <u>Fed. R. Civ. P. 55(c) and 60(b)</u>. Consistent with the traditional equitable powers of courts, Rule 55 provides relief from entries of default for "good cause shown." <u>Fed. R. Civ. P. 55(c)</u>. With respect to default judgments, Rule 55(c) provides that "if a judgment by default has been entered, a court may likewise set it aside with Rule 60(b)." <u>Fed. R. Civ. P. 55(c)</u>. The "standard to set aside the entry of default under Rule 55(c) is essentially the same as the standard for vacating a default judgment under Rule 60(b)." A motion to set aside a default requires a court to reconcile the goal of permitting the defaulting party an opportunity to

contest the merits of the dispute with the practical requirements of judicial administration and the desire not to prejudice a blameless party that has acted diligently Chrysler Credit Corp. v. Macino, 710 F.2d 363, 367 (7th Cir. 1983). Precedent teaches that a party's failure to show good cause for entry of a default alone is sufficient to warrant denial of a motion to vacate. See Zuelzke Tool, 925 F.2d at 230 (collecting Seventh Circuit cases and holding that failure to show good cause for default was sufficient basis to refuse to vacate an entry of default, even if the defendant had a meritorious defense); accord, e.g., Travelodge Hotels, Inc. v. Taurus Hotels Corp., 179 F.R.D. 569, 571 (C.D. Ill. 1998) (citing Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994), and Pretzel & Stouffer, 28 F.3d at 46) (defendant must meet all three requirements necessary to justify relief)). Binding case law has elaborated upon Rule 55(c) by requiring vacatur if the defendant shows (1) good cause for his default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. Pretzel & Stouffer v. Imperial Adjusters, Inc., 28 F.3d 42, 45 (7th Cir. 1994); O'Brien v. R.J. O'Brien & Assocs., 998 F.2d 1394, 1401 (7th Cir. 1993);United States v. Di Mucci, 879 F.2d 1488, 1495 (7th Cir. 1989).The first consideration — good cause for the defendant's default — may consist of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1);[2] Tate v. Riverboat Servs., Inc., 305 F. Supp. 2d 916, 919 (N.D. Ind. 2004). The second consideration — quick action to correct — looks at the time that passed between entry of default and the defendant's motion, yet it ultimately turns on the particular situation presented. See Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994). Factors that define such a situation are the litigant's reason for delay, his ability to learn about the grounds for judgment earlier, and the extent of prejudice suffered by the party seeking default Tate, 305 F. Supp. 2d at 923 (relying upon Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1986)). Finally, the third consideration — the existence of a meritorious defense — does not necessarily require a winning defense but instead calls for "one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." Jones, 39 F.3d at 165.

In other words, a general denial or a bare legal conclusion that a defense exists will not suffice. See Pretzel & Stouffer, 28 F.3d at 46.

19.     The Federal Rules of Civil Procedure contemplate that any challenge to the court's jurisdiction will be brought at a prejudgment stage by way of a Rule 12(b)(2) or 12(b)(5) motion to dismiss. Where the jurisdictional predicates are so challenged, it is settled that the plaintiff has the burden of establishing the jurisdictional facts. See, e.g., RAR, Inc. v. Turner Diesel, 107 F.3d 1272, 1276 (7th Cir. 1997). However, in a situation where a party seeks to vacate a default on jurisdictional grounds, the Seventh Circuit has imposed the burden of proof on the movant, usually the defendant, to establish the nonexistence of the court's jurisdiction. See Bally Expert Corp. v. Balicar, Ltd., 804 F.2d 398, 401 (7th Cir. 1986). The fact that the defendant had notice of the original proceedings but chose not to contest the jurisdictional issue until after entry of default judgment was significant to the Bally Expert court. Id. at 401.

20.     [The] lack of communication between attorney and client was not a basis for showing of good cause C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1207 (7th Cir. 1984).

21.     It is held that "routine back-office problems ... do not rank high in the list of excuses for default ..." Connecticut National Mortgage Co. v. Brandstatter, 897 F.2d 883, 884-85 (7th Cir.1990).

**ANALYSIS**

22.     The Defendant's proffered reason to vacate the entry of default is not credible and the meritorious defense fails.

    a.  First, the Defendant suggests that Ehlers and Fuss, both whom by virtue of their education and experience hold titles and positions where effective communication has been proven, failed to accurately communicate how the summons and complaint were received. Their declarations are unworthy of belief.

    b.  Secondly, the Defendant failed to assert that the inadvertence or miscommunication between

5

Ehlers, Fuss, and Blanchard were the direct and proximate cause of the Defendants failure to timely respond or otherwise file a pleading.

c. Lastly, the defendant had actual knowledge of the court proceedings as evident by the informal appearance of counsel at the Status Hearing and receipt of the summons and complaint served certified mail to the counsel on March 21, 2012 and received on March 27, 2012.

23. The Defendant lacks a meritorious defense because this issue is not subject to the Dispute Resolution Policy. Sec. II(A) defines the term "dispute" and states in pertinent part, [t]he term "dispute" excludes statutory claims that are subject to the exclusive jurisdiction of a state or federal agency.... See **Defendant's Exhibit F**. The Illinois Supreme Court has held that courts have no jurisdiction to hear independent actions for civil rights violations. The legislature intended by the Act to avoid direct access to the courts for the redress of civil rights violations Mein v. Masonite Corp., 109 Ill.2d 1, 7, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985). Illinois courts, and hence, federal courts, consistently find that cases based upon state common-law claims "inextricably linked" to civil-rights violations are subject to the Act and thus, Illinois circuit courts do not have original jurisdiction over such claims. The administrative process under the Act must be completed before a circuit court can exercise jurisdiction over these types of claims. See, e.g., Quantock v. Shared Mktg. Servs., Inc., 312 F.3d 899, 905 (7th Cir.2002); Talley v. Wash. Inventory Serv., 37 F.3d 310 (7th Cir.1994); Nanda v. Bd. of Trustees, 219 F.Supp.2d 911, 916 (N.D.Ill.2001); Johnson v. Baxter Healthcare Corp., 907 F.Supp. 271 (N.D.Ill.1995); Geise v. Phoenix Co. of Chicago, Inc., 159 Ill.2d 507, 203 Ill.Dec. 454, 639 N.E.2d 1273 (1994); Welch v. Ill. Sup.Ct., 322 Ill.App.3d 345, 256 Ill.Dec. 350, 751 N.E.2d 1187 (2001). Because complaints alleging violations of Title VII and Illinois Human Rights must first be filed with the EEOC and the Illinois Department of Human Rights respectively, this claim is therefore not a dispute as defined and therefore excluded from mandatory arbitration.

24. Given that the Defendant's declarations are unworthy of belief, it failed to assert how

inadvertence prevented a timely filed pleading pursuant Rule 12, and it had actual knowledge of litigation, it therefore failed to show good cause. Furthermore, seeing that it has no valid meritorious defense and it willfully chose not to conduct its litigation with the degree of diligence and expediency, Seventh Circuit precedent has repeatedly upheld the trial court's denial of a motion to vacate a default.

25.    Because the Defendant failed to justify vacating the entry of default, it is appropriate to promptly endeavor to determine the amount of applicable damages.

## DAMAGES

26.    "Title VII makes it unlawful for any employer to discriminate against an employee for opposing a practice made unlawful by the Act." Fine v. Ryan Intern. Airlines, 305 F.3d 746, 751 (7th Cir. 2002) (citing 42 U.S.C. § 2000e-3(a)).

27.    Pursuant to the damages limitation (damages cap) imposed by 42 U.S.C. § 1981a(b)(3), the Civil Rights Act of 1991. Under the damages cap, the sum of compensatory and punitive damages is limited based on the number of persons employed by the employer. Damages are capped at $200,000 for employers with between 200 and 500 employees, and at $300,000 for employers with more than 500 employees. 42 U.S.C. § 1981a(b)(3)(C) and (D). The County asserted that the number of employees should be determined at the time damages were awarded.

28.    Section 1981a(b)(1) provides, "A complaining party may recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The terms "malice" and "reckless indifference" refer to the employer's knowledge that it may be violating federal law. Cooke v. Stefani Management Services, Inc., 250 F.3d 564, 568 (7th Cir. 2001); Kolstad, 527 U.S. at 535. In Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999), the Supreme Court rejected the requirement that punitive damages be available only in "extraordinarily egregious" cases, and instead found an

7

award proper so long as the employer discriminates "in the face of a perceived risk that its action will violate federal law." Id. at 533, 536.

29.     Relief which may be granted in a civil action under subsection (A) if the court finds that a civil rights violation has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and may grant as relief, as the court deems appropriate, any permanent or preliminary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such civil rights violation or ordering such affirmative action as may be appropriate 775 ILCS § 5/10-102(c).

30.     The Illinois common law of retaliatory discharge has been preempted in the employment context by the Illinois Human Rights Act, 775 ILCS § 5/1-101, et seq. See Corluka v. Bridgford Foods of Ill., Inc., 671 N.E.2d 814, 817 (Ill. App. Ct. 1996). The Illinois Human Rights Act makes it "a civil rights violation for a person, or for two or more persons to conspire, to: [r]etaliate against a person because he has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, [or] sexual harassment in employment." 775 ILCS § 5/6-101(A).

31.     When a violation of the Act has occurred, the complainant should be placed in the position in which he would have been but the discrimination Clark v. Illinois Human Rights Commission, 141 Ill App 3d 178, (1st Dist 1986). The purpose of a damage award is to make the complainant whole.

32.     In O'Sullivan v. City of Chicago, the complaint, fairly read, stated five separate claims against the City, the Police Department, and Perry (the Joint Defendants), including (1) a violation of 42 U.S.C. § 1983; (2) a violation of 42 U.S.C. § 1981; (3) a violation of the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 et seq.; (4) discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.2000e; and (5) retaliation in violation of Title VII. (Complaint at ¶¶ 25-29.) It is important to note, however, that although Plaintiffs pleaded a variety of legal claims, all relied upon the same two sets of facts — the discriminatory and retaliatory actions by Perry. The complaint also

requested various forms of relief, including a declaratory judgment; an injunction; an order directing that the effects of the alleged practices be eliminated; compensatory damages for lost wages and other lost benefits; compensation for emotional and psychological damage; punitive damages; and costs, including reasonable attorney's fees. (Complaint at ¶¶ A-I.) The jury found for the City on the Plaintiffs' Title VII discrimination claim, but found for the Plaintiffs on their Title VII retaliation claim. As a result of the retaliation verdict, the jury awarded the Plaintiffs compensatory damages in the amounts of $250,000.00 for Lipman, $50,000.00 for O'Sullivan, and $25,000.00 for Roche, for a total of $325,000.00. See 833*833 O'Sullivan v. City of Chicago, 478 F.Supp.2d 1034 (N.D.Ill.2007); O'Sullivan v. City of Chicago, 2007 WL 671040 (N.D.Ill.2007); O'Sullivan v. City of Chicago, 474 F.Supp.2d 971 (N.D.Ill.2007). The City was also enjoined from further retaliation. See O'Sullivan v. City of Chicago, 2007 WL 951941 (N.D.Ill.2007).

33.     In Blount v. Stroud 232 Ill.2d 302 904 N.E.2d 1 (2009), The principal issue on appeal is whether the circuit court had subject matter jurisdiction over plaintiff's claims or, stated differently, whether plaintiff's sole source of redress was through the administrative procedures set forth in the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 (West 2000)). The jury returned a verdict in favor of plaintiff on her retaliation claims, awarding $257,350 in back pay, $25,000 for pain and suffering, and $2,800,000 as punitive damages.

**CONCLUSION**

34.     Because the Defendant has 500 or more employees and engaged in discriminatory practices with malice or with reckless indifference to my federally and state protected rights by initially failing to hire me due to my race and arrest record, maintaining a policy that discriminates against members of a protected class, forcing me to sign an arbitration policy that limited my rights pursuant Title VII of the Civil Rights Act, and retaliating against me for opposing discriminatory conduct, compensatory & punitive damages, back pay, and future pay are therefore appropriate.

35.　WHEREFORE I, Irenn Johnson, Plaintiff, request a final judgment order, as set forth in the computation of damages (see **Exhibit 11**), in the amount of $1,075,595.00 and whatever relief the court determines as appropriate.

8 MAY 2012
_____
Dated

_____
Irenn H. Johnson
Pro Se
7017 60th Avenue #101
Kenosha, Wisconsin 53142
262-577-5412 Phone

## NOTARY PUBLIC

Signed and sworn to before me on this

_____8ᵗʰ_____ day of ~~April~~ May 2012.

_Nanette R Hylinski_
Notary Public

My commission expires

on: _____8-3-14_____

[SEAL]



11

# EXHIBIT 1

**Interview Questionnaire**

**Name** MARK FUSS          **Date** 3/9/05

**Company** ORKIN

**Title** Regional Sales Manager

1. Tell me about the position or positions that you are looking to fill and what are the qualifications and responsibilities?

    INSIDE SALES, INBOUND CALLS

2. How many people have you interviewed for the position and how soon will you make a decision about this job?

    50-60   currently looking for 3 people. Start the process right away.

3. Tell me about the last two situations where you had to terminate an employee and what where the circumstances.

    None in 5½ yrs

4. Tell me about the last two situations where you promoted an employee.

    - Hired Salesperson, promoted to Supervisor in Kankee.

    - manager experience; hired for administrative Sales, tested & administrate then promoted to assistant manager

5. How do you evaluate, reward, and discipline your employees?

    - monthly evaluations (Sales) for strongest sales people find (weakest part)

    - perks for products, one minute manager - acknowledge - cool problem - solution

    - wronged - advised

6. What is the most challenging aspect of working for Orkin?

    Exceeding goals.

    Overcoming objections

7. Explain the benefit package and salary range for this position.

    $10/Hr + 2% comm.     ONCE/MONTH     ZERO CHARGEBACK
                < $50,000

    M-F      S      Sun
    6-7pm    7-1p   off

# EXHIBIT 2

4.2

| 03/07/05 | | | Walk In | |
|---|---|---|---|---|
| | Orkin Pest Control | | | |
| | 1119 Glen Rock Ave | | | |
| | Waukegan, IL 60085 | | | |
| (847) 662-4316 (847) 244-9032 fax | | | Pest Control | |
| | Mark Fuss | | Regional Sales Manager | |
| mfuss@orkin.com   www.orkin.com | | | | |

| | |
|---|---|
| 3/7- completed job application and scheduled a interview for 3/8 @ 10:30 am | 5/18 Physicals Start 1/2 hr 4/21 To be added on 5/25 |
| 3/8- Interview successful. Employment contingent background, physical, and drug screen. | 5/18 Entrance damaged 6th property of another employee |
| 3/9- completed physical and drug screen testing. | |
| 3/18- Mark said that they have decided against me for some obscured reason involving hours of availability. | |
| 3/18- I hand delivered a written request for employment records addressed to Mark and received by Keenan. | |
| 4/4  ~~START~~ Offered employment PT (30-30 hrs) contingent physical results ⟵ | by LARRY BLACK, HR |
| 4/5  medical information/results completed | |
| 4/21  Started. completed Hiring package. was not allowed to modify | |
| arbitration agreement. I was told by melanie watkins that I would | |
| lose my job if I did not sign the agreement as written. CONFERENCE call w/ LARRY BLACK, HR | |
| 4/25  provided child support info And Reavest for employment records | |

# ROLLINS, Inc.     5.1

2170 Piedmont Road, Atlanta, Georgia 30324

**Phone: (404) 888-2184**
**Fax: (404) 888-2189**

TO: BRANCH: 615/519

**DATE: 3/15/2005**

CC: REGION: ___ - Attn: Region Manager

## RE:  **CRC RESULTS**

FROM: <u>HR / PRE-EMPLOYMENT ASSESSMENT DEPARTMENT</u>

# OF PAGES (Including Cover Sheet)     1                          Sender Shawn Allen

Attached are the results of a criminal background check. Please review the marked box below to determine if the applicant is within or outside company policy. The results of the MVR have already been faxed to your region office.

---

**Applicant Name: Irenn Johnson**
**Applicant Number:** _____

**COMPANY POLICY**

**WITHIN**        **OUTSIDE**

## CRC                    | X |

---

<u>**WITHIN**</u>
If the results of the CRC are within company policy, please forward this information onto the appropriate branch. A Motor Vehicle Record Check has already been completed on this applicant and the results have already been forwarded to your office. If this applicant is hired, attach a copy of the results to the new hire paperwork and keep a copy in the employee's personnel file.

<u>**OUTSIDE**</u>
If the MVR results are <u>outside</u> company policy Human Resources will notify the appropriate branch and fax the required paperwork to give to the applicant. Please verify that the branch supplies the applicant with the following:

1. Copy of MVR
2. Copy of Consumer's Rights

*<u>If you do not receive this candidate's MVR within 72hrs or if you have any questions regarding this information, please contact Donna King at (404) 888-2184.</u>*



5.2

4199629   ATL
Tuesday, March 15, 2005
ChoicePoint Consumer Center
P.O. Box 105108
Atlanta, GA 30302
1-800-845-6004

IRENN JOHNSON
625 S DILFER AVE
222
WAUKEGAN, IL  60085

Dear: IRENN JOHNSON :

Please be advised that ChoicePoint Services Inc. is reporting public record information
concerning you to :   ROLLINS, INC of ATLANTA, GA

The results of this search, listed below, are confidential and will not be distributed to any
organization other than the one that originally requested it.  The results are not an
indication of an acceptance or a rejection of your employment or service.  A separate
letter may be forthcoming from the organization that requested your report to indicate
acceptane or rejection.

If you have any questions, please call our consumer disclosure center at 1-800-845-6004.

| Case Date | |
|---|---|
| Case # | 1992CR07956019536 |
| Source | COOK, ILLINOIS |
| Charge | CRIMINAL TRESPASS TO LAND |
| Charge Type | MISDEMEANOR |
| Disposition | PENDING NEXT COURT DATE |
| Disposition Date | 3/31/2005 |
| Sentence | |

Sincerely,


ChoicePoint
Atlanta Employment Service Center

# CASEID 4199629    5.3

| OPTION INFORMATION |
|---|

Report option: 2112                    Report name: **BACKGR CUS PK2**

| Components | Remarks | Consideration | Score |
|---|---|---|---|
| National Criminal File | | YES | |
| Felony Including Misdemeanor | | YES | |
| Social Security Verification | | NO | |

Comments

| NOTIFICATION |
|---|

| DATE SCAN |
|---|

| Start Date | End Date | Name | | Component |
|---|---|---|---|---|

Asterisk (*) dates are automatically calculated by the system.

| PUBLIC RECORDS |
|---|

| | | | |
|---|---|---|---|
| Record ordered | National Criminal File | Search Results | RECORD FOUND |
| Type of Search | NATIONAL CRIMINAL FILE SEARCH | | |
| Date of Search | 03/09/2005 | | |
| Address Covered | WAUKEGAN, LAKE, IL | | |
| Court Name/Type | DATABASE SEARCH (XDB) - COOK CIRCUIT COURT-CRIMINAL | | |
| Location | COOK, ILLINOIS, IL COOK COUNTY | | |
| Name Searched | IRENN H JOHNSON | | |
| | | | |
| Case Reference# | 1992CR07956019536 | | |
| Name on File | JOHNSON, IREEN | | |
| Address on File | NOT PROVIDED | | |
| SS# on File | | DOB on File | 06/25/1974 |
| | | | |
| Charge | CRIMINAL TRESPASS TO LAND | | |
| Charge Type | MISDEMEANOR | | |
| Disposition | PENDING NEXT COURT DATE | Date | 03/31/2005 |
| Sentence | | | |

# EXHIBIT 3

625 Dilger Avenue Unit 222
Waukegan, Illinois 60085
(847) 596-2653

March 18, 2005

*6.1*

Mark Fuss, Region Sales Manager
Orkin Pest Control
1119 Glen Rock Avenue
Waukegan, Illinois 60085
(847) 662-4316
(847) 244-9032 fax

Subject:      Employment Records
                SS# ▮▮▮▮▮▮▮▮     Date of Birth: ▮▮▮▮▮

Dear Mr. Fuss:

     Pursuant to federal and state laws, please make available copies of *all* information used in making decisions relevant to my employment.

     Such information include but are not limited to *all* pages of my original employment application, background investigation results, physical, and drug screen results, questionnaire results, disclosures, forms, memos, and notes.

Very truly yours,

Irenn H. Johnson

# EXHIBIT 4

7.1

April 25, 2005

Request for information:     Employee Records for Irenn Johnson
SS#      Date of Birth:

Human Resources:

    Pursuant to the Illinois Personnel Record Review Act 820 ILCS 40, please make available copies of *all* information used in making decisions relevant to my employment.

    Such information include but are not limited to my original employment application, background investigation results, physical, and drug screen results, questionnaire results, employment agreement, arbitration contract, all disclosures, forms, memos, and notes.

_____      4-25-05
Employee Signature              Date


_____        _____
Employer Signature               Date

# EXHIBIT 5

8.1

Complainant: Irenn Hewyt Mahon Johnson
Employee SS# 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
D.O.B June 25, 1974
625 S. Dilger Ave #222
Waukegan, IL 60085
(847) 596-2653

Respondent: Orkin Exterminating, Inc. –
2170 Piedmont Road, N.E.
Atlanta, Georgia 30324

June 8, 2005

**Claim Amount:** $7,500 ( Seven thousand five hundred dollars and 00/100 cents).

Complaint I: Intentional tort of conspiracy; Respondent conspired to deprive complainant of his rights to employment pursuant the Illinois Human Rights Act.

Complaint II: Respondent violated the Personnel Records Review Act (820 ILCS 40)

## Complaint I

The tort of conspiracy commenced on March 18, 2005, when respondent and unknown co-conspirators conspired to cause employment discrimination during the hiring process.

The complainant is African-American, a member of a protected class. The respondent knew the complainant was African-American at the initial interview conducted on March 9, 2005. The respondent knew the complainant was qualified for employment due to the information disclosed on the employment application and from pre-employment test results. An offer was implied upon the successful completion of background, physical, and drug screen.

On March 18th, the offer for employment was rescinded. The reason given was an obscured explanation involving hours of availability. Because the complainant was unemployed at the time, and available all hours as indicated on the employment application, the actual reason employment was denied was due to an arrest on November 30, 2004.

It is inherently racially discriminatory to exclude an individual from employment due to an arrest *Montgomery Ward & Co. v. Fair Employment Practices Comm'n, 49 Ill. App. 3d 796* without other information which indicate that he actually engaged in the conduct for which he was arrested *775 ILCS 5/2-103.*

Therefore, despite being qualified, the respondent attempted to deny complainant employment because he is African-American. The conspiracy ceased when the complainant was hired on April 21, 2005.

### Complaint II

On March 18, 2005, complainant provided a written request for employment records pursuant to the common-law right to access personal records. This request was not made available.

On April 25th, complainant provided a second written request pursuant the Illinois Personnel Record Review Act. The respondent refused to acknowledge the written request and has failed to release the records within seven days without offering an explanation or reason for the delay.

The respondent has currently failed to comply with the request, which is a continuing injury and an intentional disregard of the complainant's right to access employment records.

In accordance with _Black's Law Dictionary 8th edition_ and _Illinois Personal Injury_, the violation of one's legal rights is recognized as injury for which the law provides a compensational remedy. For that reason, I seek relief for $7,500.00

Irean H. Johnson      6/14/05
           Date

**[NOTARY SEAL]**

Sworn before me on this 14 day of June 2005

My commission expires 9, 26, 06

Notary Public      6-14-05
           Date

"OFFICIAL SEAL."
CHRISTINA J. HOM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9-26-0

# EXHIBIT 6

**IRENN H. JOHNSON**
7017 60TH AVE #101
KENOSHA, WI 53142

October 1, 2010

Olgetree Deakins Attorneys at Law
ATTN: Jon M. Gumbel
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
**VIA ELECTRONIC TRANSMISSION**

Re: Johnson v. Orkin; Request to reproduce

Mr. Gumbel,

I received your letter dated September 27, 2010, in that you contend in good faith that you have participated in conciliations efforts on the behalf of Orkin/ Rollins.

I respectfully request that you reproduce all relevant material in your possession regarding this charge of employment discrimination based on race and retaliation. Such information will specifically include documents regarding conciliation efforts and other supporting information in opposition of said claim.

Although, you have made it clear that Orkin/ Rollins maintains a very strong defense, your belief that the EEOC has issued its cause determination based solely on allegations of your arbitration policy, and not on the merits of my claim of discrimination and retaliation may be inaccurate and contrary to the findings. Never-the-less, there can be no misunderstanding as to the findings that there is a reasonable cause to believe Title VII has been violated.

For that reason, I am interested in a swift resolution of this claim.

Regards,

IRENN JOHNSON

Irenn Johnson
7107 60th Ave #101
Kenosha, WI 53144

November 9, 2010

Orkin, LLC
Attn: Legal
2170 Piedmont Rd NE
Atlanta, GA 30324

Subject: Johnson V. Orkin -- Conciliation Efforts

Dear Attorney:

To date, I have not received any documents that support your participation in conciliation efforts. However, I trust that you are participating in good faith.

The Chicago EEOC has determined that there is reasonable cause to believe that Title VII of the Civil Rights Act has been violated. In addition, I have enclosed copies of additional facts and supporting evidence, that has been forwarded to the Illinois Department of Human Rights, which support a violation of the Illinois Human Rights Act, specifically 775 ILCS 5/2-103(a) and 775 ILCS 5/2-101. I have also enclosed a copy of my press release that has a release date of November 30, 2010.

It is my hope that any final agreements address my direct or indirect concerns of lost wages, back pay, future pay, and compensatory damages. More importantly the final agreement should be significant enough to deter future violations or allegations and dissuade other companies from engaging in said practice.

If you have any questions, you may reach me at the above address.

Respectfully,

IRENN JOHNSON

Encl.
1. Intake doc
2. Press release

# GENERAL RELEASE

1. This release agreement ("Agreement") is hereby entered into between Irenn H. Johnson ("Johnson"), plaintiff, and Rollins, Inc and Orkin, LLC, respondent, hereinafter collectively referred to as ("Orkin").

2. This agreement is made for the purpose of compromising and concluding all disputes, including charges with Equal Employment Opportunity Commission ("EEOC"), file No. 210-2006-01523 and Illinois Department of Human Rights ("IHDR").

3. Johnson, the EEOC, and Orkin has agreed to enter into a Conciliation Agreement resolving all claims related to all charges. This agreement in conjunction with the Conciliation Agreement is intended to resolve any and all claims surrounding or involving Johnson's employment with Orkin.

4. In consideration for this agreement, Orkin will pay Johnson a total sum of One Hundred Forty-five Thousand Three Hundred Eighteen Dollars and Fifty-two cents (**$145,318.52**). This settlement amount will be paid by check made payable to Irenn Johnson within fifteen (15) days of Orkin's receipt of the fully executed original of this agreement. This settlement amount is for alleged compensatory damages, medical bills, back pay, and/or front pay or other damages associated with the dispute. There will be no amounts deducted or withheld from that settlement payment, but IRS form 1099 will be issued to Johnson in regards to the same. It is expressly understood by Johnson and Orkin that the total sum referenced above shall be paid by Orkin as consideration for both this agreement and the Conciliation Agreement.

5. Johnson hereby settles all differences and agrees to release Orkin from all claims, suits, or actions in any form or on any basis, due to anything that was done or not done at any time, on account of or relating to his employment with Orkin, including all claims and causes of actions arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Equal Pay Act; 42. U.S.C. 1981; the Americans with Disabilities Act (ADA); the Family and Medical Leave Act; the Employee Retirement Income Security Act (ERISA); the Illinois Human Rights Act; and all other comparable federal, state, or common law.

6. Johnson agrees to take action necessary to dismiss and will dismiss all charges against Orkin with the EEOC and IDHR in its entirety.

7. All parties agree that contingent upon the execution of this agreement, they and the EEOC have agreed to the terms of the Conciliation Agreement referenced herein. The parties agree and acknowledge that such Conciliation Agreement is incorporated within this agreement and is a necessary term of this agreement.

8. Other than those payments referenced herein, each party will be liable for its own costs, attorneys' fees, and expenses of litigation associated with the dispute.

9. Johnson acknowledges that this agreement or the Conciliation Agreement referenced herein in no way constitutes an admission by Orkin that it has violated any federal, state, or common law, or any other law whatsoever, and instead represents a good faith effort to resolve contested and disputed claims.

50   10. Johnson agrees and acknowledges that he will not apply for employment with Orkin, LLC and that
51   he forever waives and relinquishes any and all claims, rights or interests in reinstatement or future
52   employment that he presently has or might in the future have with Orkin, LLC.
53
54   11. In lieu of waiving and relinquishing any and all claims, rights or interests in reinstatement or future
55   employment that he presently has or might in the future have with Orkin, LLC, Orkin agrees and
56   acknowledges that the total payment referenced in paragraph 4 addresses that to which he would have
57   been entitled.
58
59   12. If the scope of any provision contained in this agreement is too broad to permit enforcement of
60   such provision to its full extent, then such provision shall be enforced to the maximum extent permitted
61   by law. If any provision of the agreement is held to be prohibited by or invalid under applicable law,
62   such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of the
63   agreement, and shall not invalidate the remainder of such provision or the remaining provision of the
64   agreement.
65
66   13. All parties agree not to disclose or publish any communication regarding the terms or conditions of
67   this release or any facts related in any way to this dispute which are untrue to any third party without a
68   legal basis for having to release said information, or as required by law, unless all parties agree in
69   writing to do so.
70
71   14. In the event any party violates any provision of this agreement, the other party may present this
72   agreement to a court of competent jurisdiction to obtain an injunction and/or other appropriate relief.
73
74   15. All parties agree that any disputes arising from this agreement shall be enforced pursuant the rules
75   and laws of the State of Illinois if appropriate.
76
77   16. With the exception of the Conciliation Agreement referenced herein, this agreement constitutes the
78   entire agreement between the parties with respect to the subject matter hereof and supersedes any prior
79   agreements addressing the subject matter hereof. Other than the Conciliation Agreement referenced
80   herein, all parties warrants that no promise or agreement not expressed herein has been made.
81
82   17. This agreement may not be changed, modified, amended, or altered in any way except by a writing
83   signed by all parties.
84
85
86
87 _____

  IRENN JOHNSON                   DATE
88
89
90
91 _____

  FOR THE COMPANY           DATE
92

**IRENN HEWYT MAHON JOHNSON**
7017 60th Ave #101
Kenosha, Wisconsin 53142
H:262.577.5412 C:262.705.0630 E:Irenn.Johnson@Gmail.com

30 March 2011

Olgetree Deakins
Attn: Jon M. Gumbel
191 Peachtree Tower St. NE, Suite 4800
Atlanta, GA 30303

SUBJECT:    Johnson v. Orkin; Rollins
               Request for Conciliation

Mr. Gumbel,

On September 27, 2010, you stated that "on behalf of Rollins/Orkins, [you] have participated in good faith and in a timely fashion with respect to the conciliation process". Unfortunately, at present, there's no meeting of the minds or any contractual execution, thus, this matter has yet to be successfully resolved.

I have evidence to support the fact that Orkin/ Rollins has engaged in unlawful discrimination when they: initially denied me employment based solely on the fact of my arrest record; denied me equal and adequate training as other members outside my protected class; and conspired to prevent me from filing a discrimination charge with the Equal Employment Opportunity Commission and the Department of Human Rights, all in contravention to Title VII of the Civil Rights Act, as amended, and the Illinois Human Rights Act respectively.

Given that I am failing to recognize a realistic and sincere effort to bring this matter to a close, as a matter of law, I am entitled to bring forth a civil claim for compensatory damages pursuant 42 U.S.C. 1985(3), 42 U.S.C.1983, and 775 ILCS 5/10-102. Specifically, $300,000 pursuant 42 U.S.C.1981(a), up to $78,000 for back pay plus interest pursuant 42 U.S.C.2000 et seq.; up to $78,000 for back pay plus interest pursuant 775 ILCS 5; and it is not unreasonable to claim and or be awarded $300,000 for pain and suffering based on current case law or pursuant 775 ILCS 5/10-102(c)(1). The total amount I may legally claim is upward of $756,000.

It is my desire to reach a silent and swift resolution as to avoid the continuous exertion of valuable resources in pursuit of a remedy.

RESPECTFULLY,

3/30/2011

X ~~Irenn Hewyt Johnson~~

IRENN HEWYT MAHON JOHNSON

Signed by: JOHNSON.IRENN.HEWYT.1293119313

CF:
1. Carmella DiNicola, Federal Investigator, Chicago EEOC
2. Orkin/ Rollins

# Ogletree
# Deakins

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*Attorneys at Law*

One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Telephone: 404.881.1300
Facsimile: 404.870.1732
www.ogletreedeakins.com

Jon M. Gumbel
jon.gumbel@ogletreedeakins.com

August 26, 2011

Irenn H. Johnson
7017 60th Ave., Apt. 101
Kenosha, WI 53142
**VIA CERTIFIED MAIL AND EMAIL**

> **RE:    Johnson v. Rollins**

Dear Mr. Johnson:

As per my earlier message to you, the EEOC and Rollins/Orkin have agreed to a conciliation agreement which resolves your pending charges before the EEOC. One of the critical terms of that conciliation agreement is the stipulation that you, as an individual, and Rollins/Orkin agree to a separate waiver and release agreement. The Commission will not involve itself in the negotiation or execution of this separate agreement. However, your agreement to a separate release is a necessary precondition to the payment by Rollins/Orkin of any and all settlement monies to you.

Enclosed/attached for your consideration is Rollins'/Orkin's proposed settlement agreement. Please carefully review and respond only to me with any thoughts or recommendations you may have. The EEOC has asked that I report back soon regarding the status of this agreement so the conciliation agreement can be finalized.

Thank you for your prompt attention to this matter.

Sincerely,

Jon M. Gumbel

JMG/kb
Enclosure

10871322.1 (OGLETREE)

Atlanta ▪ Austin ▪ Birmingham ▪ Bloomfield Hills ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Greensboro
Greenville ▪ Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ Los Angeles ▪ Memphis ▪ Miami ▪ Minneapolis ▪ Morristown ▪ Nashville ▪ New Orleans
Orange County ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ St. Louis ▪ St. Thomas ▪ San Antonio ▪ San Francisco ▪ Tampa ▪ Torrance ▪ Tucson ▪ Washington

## CONFIDENTIAL GENERAL WAIVER AND RELEASE AGREEMENT

This Confidential General Waiver, Settlement Agreement, Mutual Release of All Claims, and Promise Not to Sue ("Agreement") is hereby entered into between Irenn Johnson (hereinafter "JOHNSON") on the one hand and Rollins, Inc. and Orkin, LLC, including all of their licensees, franchisees, parents, subsidiaries, divisions, affiliates, predecessors, directors, officers, managers, employees, former employees, heirs, executors, trustees, administrators, plan administrators, employee benefit plans, agents, successors and assigns on the other hand (hereinafter collectively referred to as the "COMPANY"). This Agreement is made for the purpose of compromising and concluding all disputes, including an EEOC charge and an IDHR charge that exist between JOHNSON and the COMPANY ("PARTIES").

WHEREAS, JOHNSON was previously employed by the COMPANY;

WHEREAS, JOHNSON filed Charge No. 210-2006-01523 with the Equal Employment Opportunity Commission ("EEOC") on December 19, 2005. JOHNSON also jointly filed this Charge with the Illinois Department of Human Rights ("IDHR")(hereinafter the disputes, the EEOC and the IDHR charge are collectively referred to as "the DISPUTE");

WHEREAS JOHNSON, the EEOC and the COMPANY have agreed to enter into a Conciliation Agreement resolving all claims related to the DISPUTE; and

WHEREAS, by operation of this Agreement and in conjunction with the above-referenced Conciliation Agreement, JOHNSON and the COMPANY intend to mutually, amicably, and finally resolve said DISPUTE as well as all other claims that JOHNSON has or claims to have against the COMPANY or their privies, including any and all issues and claims surrounding or involving JOHNSON'S employment with and discharge from employment with the COMPANY arising up to the date of this Agreement.

NOW THEREFORE, in consideration of the mutual promises set forth in this Agreement, JOHNSON and the COMPANY agree as follows:

1.  As consideration for this Agreement, the COMPANY will pay to JOHNSON a total sum of SIX THOUSAND AND 00/100 DOLLARS ($6,000.00). This settlement amount will be paid by check made payable to Irenn Johnson within fifteen (15) days of the COMPANY'S receipt of the fully executed original of this Agreement or the COMPANY'S receipt of the fully executed, above-referenced Conciliation Agreement with the EEOC, whichever is fully executed later. This settlement amount is for alleged emotional damages or other compensatory damages associated with the DISPUTE. In light of the nature of the payments described herein, there will be no amounts deducted or withheld from that settlement payment, but an IRS form 1099 will be issued to JOHNSON in regards to same. It is expressly understood by JOHNSON and the COMPANY that the six thousand dollars ($6,000.00) paid to JOHNSON by the COMPANY as consideration for this Agreement shall not constitute any additional money paid above and beyond the same six thousand dollars ($6,000.00) committed by the COMPANY as consideration for the Conciliation Agreement entered into between JOHNSON, the COMPANY and the EEOC. The PARTIES agree that a total of six thousand dollars ($6,000.00) and no more shall be paid by the COMPANY as consideration for both this Agreement and the above-referenced Conciliation Agreement.

    It is expressly understood and agreed by JOHNSON that the COMPANY does not represent or guarantee that taxes should not be paid on any portion of these settlement payments. JOHNSON further agrees to pay any and all appropriate taxes related to his receipt of the settlement amount and acknowledges that he will hold the Company harmless and indemnify the Company from any liability or costs they incur (including attorneys' fees) as a result of JOHNSON'S failure to pay any such taxes or otherwise resulting from the payment in this manner.

2.  JOHNSON acknowledges that the consideration described above is sufficient consideration for this Agreement and the Conciliation Agreement, and is above and beyond anything to which he would otherwise be entitled from the COMPANY.

3.  JOHNSON hereby settles all differences between the COMPANY and him, including, without limitation, claims involving his wages, hours, working conditions, and all other terms and conditions of employment during his employment by the COMPANY and occurring up to the date of this Agreement including, but not limited to those involving the termination of his employment and all other matters related to his employment with the COMPANY. JOHNSON acknowledges full accord, satisfaction, settlement, and release of any and all charges, demands, rights, actions, causes of action, damages, or claims of damage, including, but not limited to, actual, compensatory, exemplary, liquidated, punitive, injunctive, and nominal damages as well as any related costs and attorneys' fees associated therewith, of whatsoever kind and nature which he has or may have against the COMPANY by reason of, or related to, without limitation, his employment or the termination of his employment from the COMPANY. This includes, without limitation, any claims which were or which could have been asserted in the DISPUTE.

-2-

4.    JOHNSON will take any and all required steps or actions necessary to dismiss and will move to dismiss, with prejudice, the DISPUTE, in its entirety, against the COMPANY, now pending before the Equal Employment Opportunity Commission and the IDHR in Chicago, Illinois.

5.    The PARTIES hereto acknowledge and agree that, contingent upon the execution of this Agreement, they and the EEOC have agreed to the terms of the Conciliation Agreement referenced herein. The PARTIES agree and acknowledge that such Conciliation Agreement is incorporated within this Agreement and is a necessary term of this Agreement.

6.    Other than those payments referenced herein, each party will be liable for its own costs, attorneys' fees, and expenses of litigation associated with the DISPUTE.

7.    JOHNSON acknowledges full accord and satisfaction of, and forever discharges, acquits, releases, and promises not to sue the COMPANY on any and all charges, claims, demands, rights, actions, causes of action, damages, or claims of damage relating to the employment and/or the termination of his employment by the COMPANY, whether known or unknown, that JOHNSON now has or may have against the COMPANY arising up to the effective date of this Agreement, including, without limitation, all charges, claims of money, demands, rights, and causes of action arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Equal Pay Act, 42 U.S.C. §1981, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act, the Employee Retirement Income Security Act (ERISA), the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) as amended, The Illinois Human Rights Act; all other comparable Illinois statutes and laws, municipal laws, ordinances and/or regulations; and any other federal law, state law, municipal law, local law, common law, or action arising in law, in equity, in contract (whether express or implied), or in tort, including, without limitation, any claim arising under state laws which are in the nature of claims for wrongful discharge, retaliation, emotional distress, defamation, invasion of privacy, harassment, discrimination, breach of duty, negligence and other claims related to or arising out of his employment.

8.    JOHNSON acknowledges full accord and satisfaction of, and forever discharges, acquits, releases, and promises not to sue the COMPANY on any and all charges, claims, demands, rights, actions, attorneys fees, litigation costs, causes of action, damages, or claims of damage, whether known or unknown, that he now has or may have against the COMPANY arising up to the effective date of this Agreement, including without limitation, all charges, claims of money, demands, rights, and causes of action arising under any federal law, state law, municipal law, local law, common law, or action arising in contract (whether express or implied) in tort or in equity.

9.    JOHNSON represents that he has not filed any charges or actions against the COMPANY (other than the DISPUTE referenced above) and that he will accept no damages or other monies with respect to any claims that arose before and up to the effective date of this Agreement.

10. JOHNSON acknowledges that this Agreement in no way constitutes an admission by the COMPANY that the COMPANY has violated any federal, state, or municipal law or any law whatsoever and instead represents a good faith settlement of contested and disputed claims allowing the COMPANY to buy its peace. No statement in this Agreement or the Conciliation Agreement, or consideration provided pursuant to the terms of both agreements, constitutes, nor should it be deemed to constitute, an admission by the COMPANY of any violation of law or any wrongdoing whatsoever. The COMPANY expressly denies any such wrongdoing.

11. JOHNSON agrees and acknowledges that he will not apply for employment with the COMPANY, and that he forever waives and relinquishes any and all claims, rights, or interests in reinstatement or future employment that he presently has or might in the future have with the Company.

12. This Agreement in its entirety shall be binding upon the parties hereto, their heirs, successors, legal representatives, and assigns.

13. If the scope of any provision contained in this Agreement is too broad to permit enforcement of such provision to its full extent, then such provision shall be enforced to the maximum extent permitted by law, and enforced as reformed or modified, in any proceedings brought to enforce such provision. Subject to the provisions of the foregoing sentence, whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of the Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of the Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of the Agreement. If Paragraphs 3, 4, 5, 6, 7, 8, 14 and/or 16 of the AGREEMENT are held to be prohibited by or invalid under applicable law, JOHNSON understands and agrees he would be responsible for returning all monies he received pursuant to Paragraph 1 of the Agreement to the COMPANY. JOHNSON understands and agrees that the COMPANY would be irreparably damaged in the event that the provisions of Paragraphs 3, 4, 5, 6, 7, 8, 14 and/or 16 are violated, and agrees that the COMPANY shall be entitled (in addition to any other remedy to which it may be entitled, pursuant to this Agreement, at law or in equity) to an injunction or injunctions to redress breaches of this Agreement and to specifically enforce the terms and provisions hereof.

14. JOHNSON agrees that he will not make or publish any communication which negatively impugns or detrimentally impacts the business reputation of the COMPANY.

15. This Agreement is a contract between JOHNSON and the COMPANY and is not merely a recital.

16. JOHNSON agrees that he shall maintain the terms of this Agreement in the **strictest confidence**. Specifically, JOHNSON agrees that he will not reveal the terms of this Agreement to any person, COMPANY employee, COMPANY former employee, agency, institution, company, or other entity unless the COMPANY agrees in writing that he may do so. The only exceptions to this covenant are that JOHNSON may make such

- 4 -

disclosures as are required by law, including any required disclosures to taxing agencies, and may disclose the terms of this Agreement to a tax advisor, accountant, or to legal counsel, provided that JOHNSON shall inform such persons that the terms are strictly confidential and are not to be revealed to anyone else except as required by law. JOHNSON agrees that any representation to persons not specifically accepted herein about the termination of this matter other than "the matter has been resolved" is a violation of this confidentiality covenant.

17. In the event any party violates any provision of this Agreement, the other party may present this Agreement to a court of competent jurisdiction to obtain injunctive relief or other appropriate monetary relief, including costs, and attorneys' fees.

18. JOHNSON and the COMPANY agree that the United States District Court for the Northern District of Illinois is the sole, proper jurisdiction to enforce this Agreement. The laws of the State of Illinois shall govern the interpretation and performance of this Agreement should any dispute arise concerning or related to this Agreement. JOHNSON and the COMPANY hereby submit to personal jurisdiction and venue for the United States District Court for the Northern District of Illinois for any case arising out of or relating to this Agreement.

19. With the exception of the Conciliation Agreement referenced herein, this Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreements addressing the subject matter hereof. Other than the Conciliation Agreement referenced herein, JOHNSON warrants that no promise or agreement not expressed herein has been made to him, and that in executing this Agreement he does not rely upon any statement or representation made by the COMPANY, but relies solely upon his own judgment and/or the judgment of his attorney(s) that the consideration received is received by him in full compromise, settlement, and satisfaction of all the aforesaid claims and demands whatsoever and that the consideration expressed herein is the sole consideration for this Agreement and the Conciliation Agreement referenced herein.

20. This Agreement may not be changed, modified, amended, or altered in any way except by a writing signed by JOHNSON and an authorized representative or officer of the COMPANY.

21. JOHNSON acknowledges and agrees (a) that his waiver of rights under this Agreement is knowing and voluntary and complies in full with the ADA, the FMLA, Title VII of the Civil Rights Act of 1964, and any and all other applicable federal, state and local laws, regulations, and orders; (b) that he understands the terms of this Agreement; (c) that the payment referred to in this Agreement exceeds that to which he would otherwise have been entitled, and that the actual payment is in exchange for his release of the claims and other covenants referenced in this Agreement and in the Conciliation Agreement; (d) that he has been advised via this Agreement that he has the right to consult with his attorney prior to executing this Agreement; and (f) he has had at least a reasonable period of time from the COMPANY'S final offer to consider this Agreement, and he has had sufficient time to consider his decision to enter into this Agreement.

IRENN JOHNSON

Date

FOR THE COMPANY

Date



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
(312) 869-8000
TTY (312) 869-2001
FAX (312) 869-8077

**In the matter of:**
EEOC Charge No. 210-2006-01523

## U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### AND

| | |
|---|---|
| Irenn Johnson<br>7017 60th Avenue<br>#101<br>Kenosha, WI 53142 | Charging Party |
| V. | |
| Orkin, LLC<br>2170 Piedmont Road NE<br>Atlanta, GA 30324 | Respondent |
| V. | |
| Rollins, Inc.<br>2170 Piedmont Road NE<br>Atlanta, GA 30324 | Respondent |

## CONCILIATION AGREEMENT

An investigation having been made under Title VII of the Civil Rights Act of 1964, as amended, (Title VII) by the U.S. Equal Employment Opportunity Commission ("EEOC") and EEOC having found that the evidence obtained in the investigation establishes reasonable cause to believe that Respondents violated Title VII by maintaining an arbitration policy, which the EEOC believes retaliates against employees, including Charging Party, by preventing them from engaging in protected activity and retaliating against them for engaging in protected activity, and Respondents having expressly denied that their arbitration policy was or is in any way, unlawful or that they in any way discriminated or retaliated against any employee, the Parties do resolve and conciliate this matter as follows:

## GENERAL PROVISIONS

1. The Charging Party agrees not to sue the Respondents with respect to any allegations contained in the above-referenced charge. The EEOC agrees not to use the above-referenced charge, which is also cross-filed with the Illinois Department of Human Rights, as a jurisdictional basis for filing a lawsuit against the Respondents. However, nothing in this Agreement shall be construed to preclude any party to this Agreement from bringing suit to enforce this Agreement.

2. The EEOC does not waive or in any manner limit its right to process or seek relief in any other charge or investigation that may be filed or initiated after the date of this Agreement, including, but not limited to, a charge filed by a member of the Commission against Respondents which is not based on this charge.

3. The Respondents agree that they shall comply with all requirements of Title VII, and shall prohibit any form of retaliation against employees exercising their rights under Title VII.

4. The Respondents agrees that there shall be no discrimination or retaliation of any kind against Charging Party or any person because of opposition to any practice declared unlawful under Title VII, or because of the filing of a charge, giving of testimony or assistance, or participation in any manner in any investigation, or proceedings, or hearing, under Title VII.

5. The EEOC representative to whom all certification and/or notifications required by this Agreement shall be submitted is Carmella DiNicola, Investigator, 500 W. Madison St., Suite 2000, Chicago, Illinois 60661, 312-869-8090, email: carmella.dinicola@eeoc.gov.

## CHARGING PARTY RELIEF

6. The Respondent agrees to pay compensatory damages in the amount of Six Thousand dollars ($6,000.00) within fifteen (15) days from the date of the execution of this Agreement and the Private Agreement. Charging Party shall be responsible for all taxes that may be due under the law. The payment shall be reflected on an IRS Form 1099, which will be issued by Respondents to Charging Party. The Respondent shall send said payment to the Charging Party, via certified mail, return receipt requested, to the following address:

> Irenn Johnson
> 7017 60th Avenue
> #101
> Kenosha, WI 53142

7. Respondents agree to provide written notice within fourteen (14) days of satisfying the obligations specified in paragraph 6 above, to Carmella DiNicola, Investigator, 500 W. Madison St., Suite 2000, Chicago, Illinois 60661, 312-869-8090, email: carmella.dinicola@eeoc.gov.

8. Charging Party and Respondents represent that they have negotiated and Charging Party has executed and delivered a Private Settlement Agreement separate from this Agreement. Charging Party and Respondents acknowledge and agree that the execution of this Private Settlement Agreement is a necessary prerequisite to the execution of this Conciliation Agreement. The EEOC has not participated in the negotiation of, is not a party to, and has no information regarding that Private Settlement Agreement other than the representation reflected in the preceding sentence.

## POLICY

9. Within thirty (30) calendar days of the execution of this Agreement, Respondents agree to submit to the EEOC for review their revised Alternative Dispute Resolution Policy ("ADR Policy"), addressing the following conditions that the EEOC believes limit employee EEO rights under Title VII:

   a. Section II A, which fails to mention employee EEOC rights;

   b. Section IV B, which restricts employees to filing a charge of discrimination to the "applicable contractual limitation period;" and

   c. Section VI B, which requires employees who serve Respondents with a *Demand for Arbitration* to request administrative closure ("notice of right to sue") from the EEOC within ninety (90) days.

10. After the final policy in Section 9 has been agreed to by the EEOC and Respondents, Respondents shall post notices of the ADR Policy revisions along with the revised ADR Policy at Respondents' United States office locations where, subject to the terms and conditions of the revised ADR policy, employees are subject to the ADR policy.

11. Within thirty (30) days after providing the revised ADR Policy, Respondents will certify to the EEOC that it has complied with paragraph 10 above.

## TRAINING

12. The Respondents agree to conduct training of Orkin's Human Resources Managers in

regards to the revisions to the ADR Policy referenced above. The purpose of this training is to educate Respondent Orkin's Human Resources Managers as to the amendments to and application of the revisions to the ADR Policy.

13. The Respondents agree that within thirty (30) days of the execution of this Agreement they shall submit the following information in writing for the EEOC to review:
    a.    name, address and telephone number of the proposed trainer;
    b.    qualifications of trainer;
    c.    proposed date(s) of the training;
    d.    proposed schedule and content of the training; and
    e.    list of proposed attendees

14. Within fifteen (15) days after the training is given, Respondents shall submit to the EEOC a list setting forth the name and title of all Human Resources Managers who attended the training.

## NOTICE REQUIREMENT

15. Within twenty-one (21) days of the execution of this Agreement, Respondents shall sign and conspicuously post a copy of the Notice attached as Exhibit A on all employee bulletin boards at Orkin's Illinois Region office locations. Respondents shall ensure that the Notices are not covered, defaced, or otherwise altered in any way for the duration of the posting period. These Notices shall remain posted for three (3) months following the posting thereof. Respondents shall certify to EEOC within thirty (30) days of the date of this Agreement that the Notice has been properly posted.

## REPORTING

16. Upon the EEOC's request and to ensure compliance with this Agreement, the Respondent shall provide EEOC with the documents required to be maintained by Respondent as per the terms of this Agreement.

## DURATION OF CONCILIATION AGREEMENT

17. This Agreement shall remain in effect for a period of eighteen (18) months from the date of its execution. The execution date shall be the date on which the EEOC District Director executes this agreement.

## BREACH OF AGREEMENT

18. In the event that the terms of this Agreement are not fulfilled, this Agreement may be specifically enforced in court and may be used as evidence in a subsequent proceeding in which one of the parties alleges a breach of this Agreement.

I have read this Agreement and I accept and agree to its provisions.

_____          _____
Date                                Respondent


_____          _____
Date                                Charging Party


Approved and Agreed to on Behalf of the Commission:


_____          _____
Date                                John P. Rowe
                                    District Director

## Exhibit A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison St., Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TDD: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
LEGAL FAX: (312) 869-8124

# NOTICE TO ALL EMPLOYEES

The **U.S. Equal Employment Opportunity Commission (EEOC)** has investigated whether ORKIN, LLC. violated Title VII of the Civil Rights Act of 1964, as amended (Title VII), by maintaining an arbitration policy. The EEOC found that this policy impacted employees' rights to engage in protected activity. Orkin disputes this claim. This Notice is part of a Conciliation Agreement between ORKIN, LLC and the EEOC which resolves this dispute. ORKIN, LLC, its supervisors and managers will support and comply with Federal Law which prohibits discrimination and harassment against any employee or applicant because of an individual's race. ORKIN, LLC will continue to train its management and employees regarding its obligations under Title VII. Orkin will distribute a revised ADR policy.

Orkin will comply with federal law prohibiting retaliation against any applicant or employee because he/she files an employment discrimination charge against the employer, opposes employment discrimination, or cooperates with or participates in the Government's investigation of a charge of discrimination.

Should you have any complaints or questions regarding employment discrimination, you can contact your Human Resources Manager. Your Division Human Resources Manager can be contacted at _____

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED.** This notice must remain posted as agreed upon by all parties and must not be altered, defaced, or covered by any other material. Any questions concerning this notice or compliance with its provisions may be directed to the EEOC at the above address and telephone number.

EEOC is responsible for enforcing Title VII of the Civil Rights Act of 1964, as amended, which prohibits employment discrimination based on race, color, sex, or national origin; the Age Discrimination in Employment Act of 1967, as amended; the Equal Pay Act of 1963; the Americans with Disabilities Act of 1990 and the Genetic Information Non-Discrimination Act of 2008.

_____     _____
Date                       John P. Rowe, District Director, Chicago District Office

_____     _____
Date                       ORKIN, LLC

# EXHIBIT 7

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | | |
|---|---|---|
| IRENN H. JOHNSON | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| ORKIN, LLC; ORKIN PEST CONTROL | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: ORKIN, LLC; ORKIN PEST CONTROL 2170 PIEDMONT ROAD NE, ATLANTA, GA 30324

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

### Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within __30__ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

### What happens next?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: ____01/09/2012____

_____
*Signature of the attorney or unrepresented party*

IRENN H. JOHNSON
*Printed name*

7017 60TH AVE #101, KENOSHA, WI 53142

_____
*Address*

IRENN.JOHNSON@GMAIL.COM
*E-mail address*

262-577-5412/ 262-705-0630 C
*Telephone number*

# UNITED STATES DISTRICT COURT

### for the

### Northern District of Illinois

IRENN H. JOHNSON
_____
Plaintiff

v.

ORKIN, LLC; ORKIN PEST CONTROL
_____
Defendant

Civil Action No. _____

## WAIVER OF THE SERVICE OF SUMMONS

To: IRENN H. JOHNSON
_____
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____1-9-12_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name of party waiving service of summons*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

ATLANTA GA 30324

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.84 | 0099 |
| Certified Fee | | $2.85 | 08 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $5.99 | 01/11/2012 |

Sent To  ORKIN (complaint)
Street, Apt. No.; or PO Box No.
City, State, ZIP+4  ATLANTA

PS Form 3800, August 2006        See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ORKIN
2170 PIEDMONT RD NE
ATLANTA, GA 30324

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Jenkins_        ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
1 - 20 - 12    Angela K Jenkins

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7011 0470 0001 1102 0317

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# EXHIBIT 8

MR. Gumbel,

You are the last Attorney of record for Orkin Pest Control, a complaint has been filed ~~in court~~ and a status hearing ~~in~~ in open court will be held on 3/22/12 @ 9:45 am.

Please advise your client or former client accordingly.

Regards,

Irenn Johnson
7017 60th Ave #101
Kenosha, WI 53142
262-705-0630

ENCL. (3)

# EXHIBIT 9



**Ogletree Deakins**

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys at Law*
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Telephone: 404.881.1300
Facsimile: 404.870.1732
www.ogletreedeakins.com

Jon M. Gumbel
jon.gumbel@ogletreedeakins.com

March 19, 2012

Mr. Irenn Johnson
7017 60th Avenue #101
Kenosha, WI 53142

**VIA FEDERAL EXPRESS, US MAIL AND EMAIL (irenn.johnson@gmail.com)**

RE:     **Johnson v. Orkin, LLC, Orkin Pest Control, Orkin Exterminating, Inc.**
        United States District Court – Northern District of Illinois
        Case Number: 12cv141

Dear Mr. Johnson,

Thank you for your letter dated March 17, 2012 notifying me of the status conference scheduled for March 22, 2012. However, please note that Orkin is not a proper party to your lawsuit. Also, in response to your telephone message to me today asking that I voluntarily accept service of process on behalf of Orkin and its related entities, please be advised that I am not authorized to do so.

Thank you for your attention to these matters.

Sincerely,

Jon M. Gumbel

JMG/kb

**EXHIBIT A**

# EXHIBIT 10

SENDER: COMPLETE THIS SECTION

COMPLETE THIS SECTION ON DELIVERY

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X [signature]   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

ANN Resnick   3·27·72

1. Article Addressed to:

OGLETREE, DEAKINS
ATTN: JON GUMBEL
191 PEACHTREE ST. NE
SUITE 4800
ATLANTA, GA 30303

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7011 1570 0001 2968 7669

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

Postage   $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

OGLETREE, DEAKINS
ATTN: JON GUMBEL
191 PEACHTREE ST. NE
SUITE 4800
ATLANTA, GA 30303
(summons & complaint)

7011 1570 0001 2968 7669

# EXHIBIT 11

# COMPUTATION OF DAMAGES

## BACK PAY

1.      April 21, 2005 to August 31, 2005 (dates of employment with Orkin) = 132 days.

2.      $9,784 (2005 earned wages from Orkin) / 132 days of employment = $74.12 of earned wages/day.

3.      $74.12 of earned wages per day * 365 days per year = $27,054 (Projected Annual Earned Income).

4.      $27,054(Projected Annual Earned Income) / 12 months = $2,254.50 (Projected  monthly earned income).

5.      4 months (Sep 2005 – Dec 2005) * $2,254.50 per month = $9,018 (Projected earned income through 2005).

6.      $9,784 (2005 earned wages from Orkin) + $9,018 (Projected earned income through 2005) = $18,802 2005 Projected Earned Income.

7.

| Year | Earned Wages Employee 1 | Earned Wages Employee 2 | Total Earned Wages | Projected Annual Wage | Back Pay |
|------|-------------------------|-------------------------|--------------------|-----------------------|----------|
| 2005 | $9,784.00 | | $9,784.00 | $18,802.00 | $9,018.00 |
| 2006 | | $2,356.00 | $2,356.00 | $27,054.00 | $24,698.00 |
| 2007 | $7,525.00 | $6,695.00 | $14,220.00 | $27,054.00 | $12,834.00 |
| 2008 | $18,645.00 | $3,334.00 | $21,979.00 | $27,054.00 | $5,075.00 |
| 2009 | $9,972.00 | $4,975.00 | $14,947.00 | $27,054.00 | $12,107.00 |
| 2010 | | $5,309.00 | $5,309.00 | $27,054.00 | $21,745.00 |
| 2011 | $13,600.00 | $9,030.00 | $22,630.00 | $27,054.00 | $4,424.00 |
| **Totals** | $59,526.00 | $31,699.00 | $91,225.00 | $181,126.00 | **$89,901.00** |

8.      Total Back Pay **$89,901.00**.

## FRONT PAY

9.      $25,875.00 (2005 – 2011 Average projected annual wage) - $13,032.00 (2005 – 2011 Avg earned annual wage) = $12,843.00 (Avg lost wages)

10.     $12,843.00 (Avg lost wages) * 13 yrs. (Years remaining for retirement at 20 yrs.) = $166,959.00 (Future Pay)

11.     Total lost future earnings **$166,959.00**

## PREJUDGMENT INTEREST

12.    $89, 901 (Total Back Pay)  @ 10% (Loss of use interest rate) = $8,990.10 (Loss of use interest)

13.    Total prejudgment interest **$8,990.00**

## COMPENSATORY & PUNITIVE DAMAGES

14.    Title VII of the Civil Rights Act of   1964 (as amended) $300,000

15.    The Illinois Human Rights Act (as amended) $509,745

## TOTAL CLAIM

**$1,075,595.00**

*EXHIBIT F*

**GENERAL OFFICE PROCEDURE MANUAL VOLUME I**

*Dispute Resolution*

Page #: 1-15.2

Effective Date: 2/15/05

Process Owner: Human Resources

Replaces: 7/15/04

| | |
|---|---|
| **II.**<br>**Definitions** | **A. Dispute:** The term "dispute," as used in this Policy, includes (1) all claims, actions or suits arising out of or in connection with any applicant's application for employment and the Company's actions with respect to that application, and (2) all claims, actions or suits arising out of or in connection with any employee's employment, including but not limited to the terms and conditions of any employee's employment and the termination or cessation of that employment. |

The term "dispute" further includes any such claims asserted by employees against the Company and/or all persons acting as its legal agents. The term "dispute" is expressly limited to any legal cause of action which otherwise exists under federal, state or municipal constitutional, statutory or common law.

The term "dispute" excludes statutory claims that are subject to the exclusive jurisdiction of a state or federal agency and which allow resort to a court only through appeal or for enforcement proceedings such as claims for workers compensation or unemployment insurance benefits and charges filed with the National Labor Relations Board; claims expressly excluded by applicable law; claims that are expressly required to be arbitrated under a different procedure pursuant to the terms of any employee benefit plan or otherwise; claims cognizable under the Employee Retirement Income Security Act ("ERISA"); any criminal complaint or action, or; any action initiated by the Company for purposes of preventing or stopping any unfair or unlawful competition or solicitation of its customers, and/or misappropriation of its trade secrets.

**B. Company:** The term "Company," as used in this Policy, includes, collectively, Rollins, Inc. and Orkin, Inc., together with their related and affiliated companies and entities, and those acting as its and their agents, managers, or representatives.

**C. Employee:** The term "employee," as used in this Policy, includes the Company's current, future and former employees and applicants who have signed an agreement to arbitrate and are bound by the Company's Dispute Resolution Policy, together with any others claiming through or on behalf of such individuals.

**EXHIBIT F**