| | | |
|---|---|---|
| IRENN H. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 141 |
| | ) | |
| ORKIN, LLC; ORKIN PEST CONTROL; | ) | Judge Ruben Castillo |
| ORKIN EXTERMINATING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On January 9, 2012, Plaintiff Irenn H. Johnson ("Johnson"), appearing *pro se*,

commenced this suit against Orkin, LLC ("Orkin"), Orkin Pest Control ("OPC"), and Orkin

Exterminating, Inc., ("OEI") (collectively, "Defendants") by filing a complaint with this Court

alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and

the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1-101 *et seq.* (R. 1, Compl.) Johnson

alleges that Defendants discriminated against him before and during his employment with them

on the basis of his race and arrest record and retaliated against him for engaging in protected

behavior. (*Id.* at 1-3.) Presently before the Court are two motions. First, Defendants have

moved to dismiss Johnson's complaint or, in the alternative, to compel arbitration. (R. 38, Defs.'

Mot.) Second, Johnson has filed a motion to stay the proceedings and to strike Defendants'

motion to dismiss. (R. 41, Pl.'s Mot.)[1]  For the reasons discussed herein, Defendants' motion to compel arbitration is granted. Accordingly, Johnson's motion is denied as moot, and this case is dismissed.

## RELEVANT FACTS

Johnson is an African-American male who has an arrest record. (R. 1, Compl. ¶ 3.) On March 7, 2005, Johnson completed a job application with Defendants and scheduled an interview for March 9, 2005. (*Id.* ¶ 7.) On March 9, Defendants allegedly offered Johnson employment contingent upon the results of a background check, a physical examination, and a drug screening. (*Id.*) Johnson alleges that his job offer was rescinded on March 18, 2005, due to his race and his arrest record. (*Id.* ¶¶ 5, 7-8.) Johnson further alleges that Defendants failed to use other information to determine whether he actually engaged in any unlawful conduct related to the offenses he was charged with in connection with his arrest and negligently rescinded his job offer based solely upon the fact of his arrest. (*Id.* ¶ 8.)

On or about April 4, 2005, Defendants offered Johnson employment. (*Id.*) Johnson's employment with Defendants commenced on April 21, 2005. (*Id.*) On that date, Johnson alleges that he was unwillingly forced to sign a mandatory arbitration policy that prevented him from engaging in protected activity and that Defendants retaliated against him for engaging in protected activity by subjecting him to different terms and conditions of employment. (*Id.* ¶ 10.)

---

[1]  The Court construes Johnson's motion as a response brief to Defendants' motion to dismiss because in his motion he responds, with legal arguments, to Defendants' bases for dismissing his complaint in an attempt to defeat Defendants' motion to dismiss. (R. 41, Pl.'s Mot.; R. 37, Defs.' Mot.) "Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. They may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381-82 (2003) (internal citations omitted).  Thus, the Court recharacterizes Johnson's motion, in part, as his response to Defendants' motion to dismiss.

2

Johnson claims that Defendants' mandatory arbitration policy limited his rights pursuant to Title VII by: (1) failing to mention his Equal Employment Opportunity Commission ("EEOC") rights under Section II A; (2) restricting his ability to file a charge of discrimination within the "applicable contractual limitation period" under Section IV B; and (3) requiring employees who serve Defendants with a "Demand for Arbitration" to request administrative closure (*i.e.*, "notice of right to sue") from the EEOC within 90 days. (*Id.* ¶ 11.) Johnson also alleges that he suffered an adverse employment action after engaging in protected activity when his employment was terminated on August 31, 2005. (*Id.* ¶ 13.) Johnson further alleges that there is a connection between his exercise of protected activity and his termination. (*Id.* ¶ 14.)

As a condition of his employment with Defendants, Johnson entered into an Agreement to Arbitrate and an Employment Agreement with Defendants, and he agreed to Defendants' Dispute Resolution Policy ("DRP"), which was referenced in Johnson's Agreement to Arbitrate. (R. 41, Pl.'s Mot. ¶¶ 5-6, 39, 44; R. 38-1, Defs.' Mot., Ex. A, Abit. Agree.; R. 38-1, Defs.' Mot., Ex. B. Empl'y. Agree., R. 38-1, Defs.' Mot., Ex. C, DRP.) In addition, as a condition of being considered for employment by Defendants, Johnson's Employment Application also included an agreement to arbitrate. (R. 41, Pl.'s Mot. ¶ 3.)

The April 21, 2005 Agreement to Arbitrate that Johnson entered into with Defendants states, in relevant part:

> I desire, as does the Company, to resolve any disputes regarding or arising from my employment in an expeditious and economical fashion. I recognize and agree, as does the Company, that arbitration of such disputes through binding arbitration is in the best interest of both parties. Therefore, in consideration of employment and the mutual promises, covenants, and conditions set forth in this Agreement, I agree, as does the Company, to abide by the Company's Dispute Resolution Policy and to arbitrate any dispute, claim or controversy regarding or arising out of my employment (as defined by the Company's Policy . . .) that may arise

3

between me and the Company, its parents, subsidiaries, affiliates and any other persons or entities acting as its agents. The parties agree that the Company's operations directly affect interstate commerce to the extent that all procedures hereunder contemplated shall be subject to, and governed by, the Federal Arbitration Act . . .

(R. 37, Defs.' Mot., Ex. A, Arbit. Agree. ¶ 2.) Expressly incorporated within the parties'

Agreement to Arbitrate is Defendants' February 15, 2005 DRP, which states:

This Dispute Resolution Policy [ ] establishes the procedures both you and the Company are required to follow for resolving any "dispute" between us. The Policy applies to and legally binds the Company, together with you and the Company's current and/or [ ] former employees and applicants.

. . . All parties are required to use this [dispute resolution] process exclusively, rather than more formal court litigation, so the merits of such disputes are more promptly and efficiently resolved.

(R. 37, Defs.' Mot., Ex. C, DRP at I.) The DRP defines "disputes" as:

(1) all claims, actions or suits arising out of or in connection with any applicant's application for employment and the Company's actions with respect to that application, and (2) all claims, actions or suits arising out of or in connection with any employee's employment, including but not limited to the terms and conditions of any employee's employment and the termination or cessation of that employment.

(*Id.* at II A.) Consistent with the above, the DRP includes any and all claims brought under

Title VII or the Illinois Human Rights Act ("IHRA"), such as those at issue in this suit, but it

does not prohibit employees from filing charges of discrimination with the EEOC or a relevant

State agency, such as the Illinois Department of Human Rights ("IDHR" or the "Department").

(*Id.* at IV B, VI B.)

Executed on the same day as the Agreement to Arbitrate, Johnson's Employment

Agreement with Defendants' parent company, Rollins, Inc., states in relevant part that Johnson:

consents and agrees to submit to binding arbitration with the American Arbitration Association located in Atlanta, Georgia which . . . shall be the sole

4

and exclusive forum for purposes of resolving any dispute . . . relating to the employment relationship between Employee and Rollins.

(R. 37, Defs.' Mot., Ex. B, Empl'y.. Agree. ¶ 5.)

As a job applicant, Johnson requested that Defendants produce his personnel file, but Defendants declined to do so. (*Id.* ¶ 41.) Four days after Defendants hired him, Johnson again requested his personnel file, which Defendants this time provided to him. (*Id.* ¶¶ 5-6.) Johnson's personnel file included Johnson's Employment Application, Agreement to Arbitrate, and Employment Agreement, among other documents, but it did not include Defendants' Employee Handbook or DRP, neither of which Johnson specifically requested. (*Id.* ¶¶ 6, 12.) On August 31, 2005, Johnson's employment was terminated. (*Id.* ¶ 12.) Five months later Johnson again requested his personnel file, and Defendants again provided it to him. (*Id.*)

On December 19, 2005, Johnson filed a Charge of Discrimination with the EEOC alleging that Defendants discriminated against him during his employment on the basis of his race and in retaliation for engaging in protected activity. (R. 1, Compl. ¶¶ 2, 5-6, 12-14; R. 1, Compl., Ex. A, EEOC Charge.) On February 1, 2006, the IDHR sent Johnson a letter notifying him that the Department had become aware of the fact that he had filed a Charge of Discrimination with the EEOC and advising him on how to proceed with the IDHR for claims of discrimination pursuant to the IHRA, 775 Ill. Comp. Stat. 5/1-101 *et seq.* (R. 41, Pl.'s Mot., Ex. 8, Feb. 1, 2006 IDHR Letter.) Johnson did not file a Charge of Discrimination with the IDHR alleging violations of the IHRA until May 5, 2011. (R. 41, Pl.'s Mot., Ex. 23-2, IDHR Charge.) Johnson later moved to amend his Charge with the Department to include a new claim of arrest record discrimination pursuant to Section 5/2-103 of the IHRA. (R. 41, Pl.'s Mot. at 5; R. 41,

5

Pl.'s Mot., Ex. 22, Mot. Am. Charge.) The IDHR did not amend Johnson's Charge or investigate his new claim. (R. 18-8, Defs.' Mot. Vacate, Ex. H, IDHR Notice Dismissal at 15-18.)

Johnson also alleges that on or about June 8, 2008, he engaged in protected activity by filing a written complaint opposing Defendants' discriminatory conduct. (R. 1, Compl. ¶ 12.)

On August 19, 2010, the EEOC determined, based on its investigation of Johnson's charges, that there was reasonable cause to believe that Title VII had been violated. (R. 1, Compl. ¶ 2; R. 1, Compl., Ex. B, EEOC Determination.) Ultimately, the EEOC and the IDHR issued Johnson Notices of Right of Sue Defendants on October 11, 2011 and November 2, 2011, respectively. (R. 1, Compl., Ex. C, Notice Right Sue; R. 18-8, Defs.' Mot. Vacate, Ex. H, IDHR Notice Dismissal.) Johnson filed his complaint in this case on January 9, 2012. (R. 1, Compl. ¶¶ 5-8, 12-14.)

## PROCEDURAL HISTORY

On January 9, 2012, Johnson commenced this cause of action by filing a *pro se* complaint with this Court. (R. 1, Compl.) On April 16, 2012, Johnson moved for entry of default against Defendants, all of whom had been properly served, for failing to answer or otherwise plead to the complaint. (R. 12, Pl.'s Mot. Default J.) On April 19, 2012, the Court granted Johnson's motion for entry of default against Defendants. (R. 13, Min. Entry.) The Court retained jurisdiction to enter a specific final judgment and encouraged the parties to exhaust all settlement possibilities. (*Id.*) On April 30, 2012, Defendants moved to vacate the entry of default and for leave to file a motion to dismiss or to compel arbitration. (R. 18, Defs.' Mot. Vacate.) On May 9, 2012, Johnson filed a motion for final judgment. (R. 21, Pl.'s Mot. Final J.) On September 26, 2012, in a written Memorandum Opinion and Order, the Court granted Defendants' motion to vacate

6

the entry of default and granted Defendants leave to file a motion to dismiss or compel arbitration. *Johnson v. Orkin, LLC*, 286 F.R.D. 337, 339 (N.D. Ill. 2012); (R. 38, Mem. Op. and Order at 4-5). The Court held as it did because Johnson had failed to provide Defendants or their counsel with at least seven days written notice of his motion for an entry of default as required by Rule 55(b)(2) of the Federal Rules of Civil Procedure, and thus the judgment was void for want of due process. *Johnson*, 286 F.R.D. at 339; (R. 38, Mem. Op. and Order at 4-5). The Court therefore denied Johnson's motion for final judgment as moot and vacated the entry of default against Defendants. *Johnson*, 286 F.R.D. at 339; (R. 38, Mem. Op. and Order at 5).

On October 22, 2012, Defendants filed the instant motion to dismiss Johnson's complaint or, in the alternative, to compel arbitration. (R. 37, Defs.' Mot.) On October 29, 2012, Johnson filed the instant motion to stay the proceedings and to strike Defendants' motion to dismiss. (R. 41, Pl.'s Mot.) In their motion to dismiss or compel, Defendants first argue that OPC and OEI should be completely dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because of the three named Defendants, Orkin is the only legal entity in existence and actually named in Johnson's Charges of Discrimination filed with the EEOC and the IDHR. (R. 37, Defs.' Mot. at 1.) Defendants also argue that the complaint should be dismissed, in part, pursuant to Rule 12(b)(6), because Johnson did not exhaust his administrative remedies with respect to his arrest record discrimination claim, which was not included in his underlying Charges of Discrimination with either the EEOC or the IDHR. (*Id.*) In addition, Defendants claim that the complaint should be dismissed, in its entirety, pursuant to Rule 12(b)(6) and the doctrine of laches because Johnson unreasonably and without excuse waited nearly six years after filing his Charge of Discrimination with the EEOC before commencing suit in this Court,

7

which Defendants allege has materially prejudiced their defense. (*Id.* at 1-2; R. 1, Compl., Ex. A, EEOC Charge.) Alternatively, Defendants argue that the Court should dismiss the complaint, in its entirety, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and compel the parties to submit to arbitration because the complaint is subject to mandatory arbitration in accordance with various enforceable arbitration agreements executed between Johnson and Defendants, as well as Defendants' DRP. (R. 38, Defs.' Mot. at 2; R. 38-1, Defs.' Mot., Ex. A, Arbit. Agree.; R 38-1, Defs.' Mot., Ex. C, DRP.)

## LEGAL STANDARDS

### A. Legal standard for a Rule 12(b)(1) motion to dismiss

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The federal courts are courts of limited subject matter jurisdiction; they possess only those powers authorized, prescribed, or expressly conferred upon them by Article III of the Constitution and by Congress. *See* U.S. Const., art. III §§ 1, 2; U.S. Const., art. I § 8; *United States v. Denedo*, 556 U.S. 904, 912 (2009) ("Assuming no constraints or limitations grounded in the Constitution are implicated, it is for Congress to determine the subject-matter jurisdiction of federal courts."); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Kempe's Lessee v. Kennedy*, 9 U.S. (5 Cranch) 173, 185 (1809) (Marshall, C.J.) ("The courts of the United States are all of limited jurisdiction, and their proceedings are erroneous, if the jurisdiction be not shown upon them."). Therefore, the objection presented by a Rule 12(b)(1) motion challenging the Court's subject matter

jurisdiction is that the Court has no authority or competency to hear and decide the case before it. *Int'l Union of Operating Eng'rs Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 280-82 (7th Cir. 2009).

The Defendants move to compel arbitration pursuant to Rule 12(b)(1) because they contend that the Arbitration Agreement divests the Court of subject matter jurisdiction over this cause of action and that without subject matter jurisdiction, the action cannot be maintained in this tribunal. (R. 41, Defs.' Mot. at 2.) The standard of review for a Rule 12(b)(1) motion to dismiss depends upon the purpose of the motion. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) *(en banc)*, *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012). Subject matter jurisdiction is an issue that should be resolved early. *Id.* If subject matter jurisdiction is not evident from the face of the complaint, the Court analyzes the motion to dismiss under Rule 12(b)(1) as any other motion to dismiss: assuming for purposes of the motion that all of the well-pleaded allegations in the complaint are true and drawing all reasonable inferences in favor of the nonmoving party. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Because the instant motion sounds under Rule 12(b)(1), the Court may consider matters outside of the pleadings. *Paley v. United States*, 349 F.3d 418, 424-25 (7th Cir. 2003); *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987); 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1350 (3d ed. 2002). Thus, the Court may properly look beyond the jurisdictional allegations in the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Apex Digital, Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir.

9

2009); *Ezekiel*, 66 F.3d at 897. In considering the complaint in this case the Court is reminded that *pro se* complaints, "however inartfully pleaded," are to be liberally construed, and the Court holds *pro se* filings to a lower standard than it applies to the more formal pleadings usually drafted by lawyers. *Erickson*, 551 U.S. at 94; *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). However, "*pro se* litigants are masters of their own complaints," and "District judges have no obligation to act as counsel or paralegal to *pro se* litigants." *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005). When "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion." *Id.*; *see also Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). In adjudicating a Rule 12(b)(1) motion, a court may weigh the evidence to determine whether jurisdiction has been established. *United Phosphorous*, 322 F.3d at 946. The burden of proving that jurisdiction exists is on the party invoking the court's jurisdiction, usually the plaintiff. *Id.*

The Seventh Circuit has not directly spoken on the applicability of Rule 12(b)(1) to the dismissal of an action when a court grants a motion to compel arbitration. However, its decision in *Continental Casualty Co. v. American National Insurance Co.* is instructive. 417 F.3d 727, 727 (7th Cir. 2005). In *Continental*, the Seventh Circuit noted that a series of district courts have held that a determination regarding arbitrability is "jurisdictional and therefore, a Rule 12(b)(1) dismissal is appropriate." *Id.* at 732. While the Seventh Circuit did not ultimately reach the issue of whether a Rule 12(b)(1) dismissal was appropriate in *Continental*, the court did note that "[t]his view stems from *Evans v. Hudson Coal Co.*, 165 F.2d 970 (3d Cir. 1948), a case that

10

analogized a motion to stay pending arbitration to an assertion that the district court lacked subject matter jurisdiction—a Rule 12(b)(1) assertion. ('[The district court] is thus, pending arbitration, deprived of jurisdiction of the subject matter.')." *Continental*, 417 F.3d at 732 n.7 (alterations in original) (internal citation omitted). The *Continental* court noted that many courts have taken the view that if a district court determines that the parties are bound by an arbitration agreement, the district court no longer has the authority to resolve arbitrable claims. *Id.* at 732 (citing 9 U.S.C. § 3). These courts consider such a determination to be jurisdictional in nature and therefore find that Rule 12(b)(1) is an appropriate vehicle to bring a motion to compel arbitration and dismiss the action. *See, e.g., Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc.*, 680 F.3d 118, 126 (1st Cir. 2012) (affirming district court's decision to compel arbitration and dismiss the suit for lack of subject matter jurisdiction); *U.S. for use of Lighting and Power Servs., Inc. v. Interface Constr. Corp.*, 553 F.3d 1150, 1152 (8th Cir. 2009) (affirming the use of a Rule 12(b)(1) motion when a party files a motion to compel arbitration); *Omni Pinnacle, LLC v. ECC Operating Servs., Inc.*, 255 F. App'x 24, 25 (5th Cir. 2007) (upholding the district court's decision to compel arbitration and dismiss the suit under Rule 12(b)(1)); *Harris v. United States*, 841 F.2d 1097, 1099 (Fed. Cir. 1988) (same); *Atkins v. Louisville & Nashville R.R. Co.*, 819 F.2d 644, 647 (6th Cir. 1987) (same). Many courts within this District have likewise treated motions to compel arbitration as assertions that they are without subject matter jurisdiction during the course of arbitration, and thus if arbitration is to be compelled, the court should dismiss the suit for want of subject matter jurisdiction. *See, e.g., Montgomery v. Corinthian Colls., Inc.*, No. 11 C 365, 2011 WL 1118942, at *2 (N.D. Ill. Mar. 25, 2011); *Reineke v. Circuit City Stores, Inc.*, No. 03 C 3146, 2004 WL 442639, at *1 (N.D. Ill.

11

Mar. 8, 2004); *Falbe v. Dell, Inc.*, No. 04-C-1425, 2004 WL 1588243, at *1 n.1 (N.D. Ill. July 14, 2004); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, No. 10-cv-6896, 2011 WL 307617, at *1 n.2 (N.D. Ill. Jan. 28, 2011);; *Johnson v. Universal Fin. Grp., Inc.*, No. 02 C 1875, 2002 WL 1968388, at *1 (N.D. Ill. Aug. 22, 2002); *Jacobsen v. J.K. Pontiac GMC Truck, Inc.*, No. 01 C 4312, 2001 WL 1568817, at *1 n.1 (N.D. Ill. Dec. 10, 2001); *LCA, Inc. v. Sharp Elecs. Corp*, No. 00 C 3283, 2000 WL 1222044, at *1 (N.D. Ill. Aug. 22, 2000); *Johnson & Bell, Ltd. v. ASA Legal Sys.*, No. 99 C 8327, 2000 WL 139473, at *1 (N.D. Ill. Jan. 31, 2000); *Robert Half Int'l, Inc. v. Thompson*, No. 98 C 1080, 1999 WL 138849, at *1 (N.D. Ill. Mar. 5, 1999).

## B.      Legal standard for a motion to compel arbitration

The Federal Arbitration Act ("FAA" or the "Act"), 9 U.S.C. § 1 *et seq.*, was originally enacted in 1925 and then reenacted and codified in 1947 as Title 9 of the United States Code. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citing *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219-20, and n.6 (1985)). The purpose of the Act was to reverse the enduring judicial hostility to arbitration agreements that existed at English common law and that was subsequently adopted by American courts. *Id.* The drafters of the Act intended to place arbitration agreements "upon the same footing as other contracts, where it belongs," and overrule "the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds Inc.*, 470 U.S. at 219-20 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)) ("We conclude, however, on consideration of Congress' intent in passing the statute, that a court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made. The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate."); *see also Green Tree Fin.*

12

*Corp.-Ala. v. Randolph,* 531 U.S. 79, 89 (2000). The FAA reflects "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion,* ——U.S. ——, ——, 131 S. Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. ——, ——, 130 S. Ct. 2772, 2776 (2010) (internal quotation marks omitted)). Indeed, in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, the Supreme Court characterized the federal policy favoring arbitration as "emphatic." 473 U.S. 614, 631 (1985).

The Act requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *AT&T Mobility*, 131 S. Ct. at 1748; *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *Choice Hotels Int'l, Inc. v. BRS Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). This is based on the fact that the Act, both by its plain meaning and the strong federal policy favoring arbitration that it reflects, requires courts to enforce agreements between parties to arbitrate, and "not substitute [its] own views of economy and efficiency" for those of Congress. *Dickinson v. Heinold Secs., Inc.*, 661 F.2d 638, 646 (7th Cir. 1981).

The FAA's primary substantive provision, § 2, states that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be *valid, irrevocable, and enforceable,* save upon such grounds as exist at law or in equity for the

13

revocation of any contract." 9 U.S.C. § 2 (emphasis supplied). Section 3 of the Act mandates that courts stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement"; and § 4 obligates courts to compel arbitration "in accordance with the terms of the agreement" upon the "application" of either party to the agreement. 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."); *see also AT&T Mobility*, 131 S. Ct. at 1748. The burden is on the party opposing arbitration to demonstrate that the arbitration agreement is unenforceable. *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 227 (1987). To determine whether a valid arbitration agreement exists between the parties, courts look to the State law that ordinarily governs the formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Reliance Ins. Co. v. Raybestos Prods. Co.*, 382 F.3d 676, 678-79 (7th Cir. 2004).

The legal standards that govern this Court's adjudication of a motion to compel arbitration are not new; they were set forth in a trilogy of cases decided by the Supreme Court in 1960, known as the *Steelworkers Trilogy. AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citing *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers v.*

14

*Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960)). The first principle that the Court draws from the *Trilogy* is that arbitration is strictly a matter of contract, and a party cannot be compelled to submit any dispute to arbitration that he has not agreed to so submit. *Warrior & Gulf*, 363 U.S. at 582. "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id.* at 648-49 (citing *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374 (1974)). Therefore, before staying or dismissing an action and ordering arbitration, the Court must first determine whether the parties agreed to arbitrate the dispute at issue. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, — U.S. — —,——, 130 S. Ct. 2847, 2856 (2010). The Supreme Court recently emphasized that the "first principle that underscores all of [its] arbitration decisions" is that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Id.* at 2857 (internal quotation marks omitted).

The second principle that the Court gleans from the *Trilogy*, which "follows inexorably from the first," is that the question of arbitrability is indisputably an issue for judicial resolution, and unless the parties clearly and unambiguously provided otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court and not an arbitrator. *AT&T Techs.*, 475 U.S. at 649; *Warrior & Gulf*, 363 U.S. at 582-83. If the making of the arbitration agreement is "in issue, the court shall proceed summarily to a trial thereof." 9 U.S.C. § 4. The FAA does not expressly identify the evidentiary standard that a party attempting to avoid compelled arbitration must meet. Most Circuit Courts of Appeals that have examined the issue, including the Seventh Circuit, have analogized the standard to be applied when adjudicating the validity of an

arbitration agreement to the standard imposed on a party opposing a motion for summary judgment pursuant to Rule 56(e) of the Federal Rules of Civil Procedure. *See, e.g., Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Hancock v. Am. Tel & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012); *Control Screening LLC v. Technological Application & Prod. Co., HCMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012); *Wachovia Bank Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011); *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009); *Aliron Int'l, Inc. v. Cherokee Nation Indust., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992).

"The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder*, 305 F.3d at 735. In other words, the party opposing compelled arbitration will fail if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). As with a motion for summary judgment, in determining whether there is a genuine issue of material fact to preclude judgment as a matter of law and require that the dispute proceed to trial, the evidence submitted by the party opposing arbitration is accepted as true, and all justifiable inferences must be drawn in his favor. *Tinder*, 305 F.3d at 735. A party cannot avoid arbitration, however, merely by putting forward a general denial of the facts upon which the right to arbitrate rests; rather, the party opposing compelled arbitration must identify *specific* evidence in the record demonstrating a genuine issue of material fact for trial. *Id.*

16

The third principle that the Court derives from the *Trilogy* is that in ascertaining whether the parties agreed to submit a particular grievance to arbitration, a court *must not* rule, evaluate, weigh, or in any way pass on the potential merits of the underlying claims. *Am. Mfg. Co.*, 363 U.S. at 568; *see also AT&T Techs.*, 475 U.S. at 650. Resolving the underlying merits of a dispute between the parties to a valid arbitration agreement is a matter within the exclusive province of the arbitrator and is a function solely for him. *Am. Mfg. Co.*, 363 U.S. at 568. The final principle that the Court derives from the *Trilogy* provides that:

> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." . . . "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

*AT&T Techs.*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 582-83, 585; citing *Gateway Coal*, 414 U.S. at 377-78) (alteration in original). In resolving a motion to compel arbitration, the court should vigilantly bear in mind the Supreme Court's instruction that "as a matter of federal law, any doubts concerning the scope of arbitrable issues *should be resolved in favor of arbitration.*" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (emphasis supplied). Thus, courts must heed this strong federal policy favoring arbitration by liberally and broadly construing the contractual language concerning the scope of arbitral issues in an arbitration agreement and by resolving all doubts with respect to the contract's coverage in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 415 U.S. 52, 62 (1995); *Cnty. of McHenry*, 438 F.3d at 823.

It is well settled in this Circuit that in order to compel arbitration, the court must find (1) that a written arbitration agreement exists between the parties; (2) that there is a dispute among

17

the parties within the scope of the arbitration agreement; and (3) that one of the parties is refusing to comply with the arbitration agreement by declining to participate in arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005); *see also Kiefer Spec. Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999). If the existence of an arbitration agreement is genuinely disputed, courts must proceed to trial to resolve that issue. 9 U.S.C. § 4.

## ANALYSIS

### I. The proper parties to arbitration

Defendants argue that Orkin is the only proper defendant to this suit. (R. 38, Defs.' Mot. at 4-5.) "To be sued in Illinois, a defendant must have a legal existence, either natural or artificial." *DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 n.2 (7th Cir. 2000); *see also McRoy v. Cook Cnty. Dep't of Corrs.*, 366 F. Supp. 2d 662, 667 (N.D. Ill. 2005) ("To be sued in Illinois, a defendant must have a separate legal existence, either natural or artificial.") (citing *Jackson v. Vill. of Rosemont*, 536 N.E.2d 720, 732) (Ill. App. Ct. 1st Dist. 1988)) (Castillo, J.). Of the three named Defendants in this suit, Orkin is the only legal entity in existence and thus the only proper Defendant to this cause of action. (R. 36, Defs.' Corp. Discl. Statements) (certifying that OPC and OEI are not legal entities). Furthermore, OPC and OEI were not Johnson's employers, were not included within his Charges of Discrimination, nor were they included in the EEOC's Determination or Notice of Right to Sue. (R. 1, Compl., Ex. A, EEOC Charge; R. 1, Compl., Ex. B, EEOC Determination; R. 1, Compl., Ex. C, Notice of Right to Sue.) Under the well-settled law of this Circuit, "a party not named as the respondent in an EEOC charge may not be sued under Title VII." *Tamayo*, 526 F.3d at 1089.

18

In addition, the Court must determine whether OPC and OEI are proper parties to arbitration. Arbitration is contractual in nature; a party can only be compelled to arbitrate those matters that it has agreed to submit to arbitration. *Warrior & Gulf*, 363 U.S. at 582; *Granite Rock Co.*, 130 S. Ct. at 2856. "Whether the parties have agreed to arbitrate is a question normally answered by the court rather than by an arbitrator." *Zurich Am. Ins. Co.*, 466 F.3d at 580; *Warrior & Gulf*, 363 U.S. at 582-83. Johnson has not come forward with any evidence that OPC or OEI agreed to be bound by any of the arbitration agreements between Johnson and Orkin. On the record before the Court, it is evident that OPC and OEI did not agree to submit any claims to arbitration. Therefore, they cannot be compelled to submit to arbitration. *Granite Rock Co.*, 130 S. Ct. at 2856. Significantly, Johnson does not dispute that Orkin is the only proper Defendant and the only Defendant subject to arbitration. (*See* R. 41, Pl.'s Mot.) Therefore, for the reasons stated above, Orkin Pest Control and Orkin Exterminating, Inc. are hereby dismissed from this suit.

## II.     Whether Johnson's claims are subject to arbitration

The FAA allows the Court, upon being petitioned by one of the parties to a dispute, to compel arbitration when the other party has failed or refuses to comply with a valid arbitration agreement. 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."). The FAA further provides that this Court may issue orders compelling arbitration when one party fails or refuses to comply with an arbitration agreement. *Id.*; *see also Waffle House*, 534 U.S. at 289 (citing 9 U.S.C. §§ 3 and 4). The Act does not mandate the arbitration of

claims; it merely mandates the enforcement of privately negotiated arbitration agreements upon the motion of one of the parties. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989).

Unless there is some ambiguity in the terms of the agreement, the language of the contract defines the scope of disputes that are subject to arbitration. *Waffle House*, 534 U.S. at 289. The FAA requires enforcement of valid, written arbitration agreements, and the Court evaluates agreements to arbitrate using the same standard as it would for any other contract. *Tinder*, 305 F.3d at 733 (citing 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 111-12 (2001)); *accord Melena*, 847 N.E.2d at 107 ("After careful consideration, we agree with those federal circuit courts of appeal which base their analysis upon principles of fundamental contract law because we believe that approach is more faithful to the FAA."). Whether a binding arbitration agreement exists is a matter of State law. 9 U.S.C. § 2; *First Options of Chi.*, 514 U.S. at 944. Therefore, Illinois contract law governs Johnson's various arbitration agreements and DRP with Orkin. (R. 38-1, Defs.' Mot., Ex. A, Arbit. Agree.; R 38-1, Defs.' Mot., Ex. C, Dispute Resolution Policy.) Although the existence of an arbitration agreement is a matter of State law, the Court looks to federal law in applying and interpreting the FAA. *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003).

The Illinois General Assembly clearly shares with Congress the same favorable view of arbitration agreements and their enforcement, as evidenced by its enactment of the Illinois Uniform Arbitration Act ("IUAA"), 710 Ill. Comp. Stat. 5/1 *et seq.*, in 1961. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 111 (Ill. 2006). The Supreme Court of Illinois has declared that the "public policy in Illinois favors arbitration." *Phoenix v. Rosen*, 949 N.E.2d

639, 647 (Ill. 2011). The same court recognized that the basic intent of the IUAA is "to discourage litigation and foster the voluntary resolution of disputes in a forum created, controlled and administered by the agreement to arbitrate." *Melena*, 847 N.E.2d at 111. "The [Illinois Uniform Arbitration] Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes. Accordingly, it empowers courts, upon application of a party, to compel or stay arbitration, or to stay court action pending arbitration." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 530 N.E.2d 439, 443 (Ill. 1988). Acting with the same intent that Congress did in passing the FAA, the Illinois legislature in enacting the IUAA "intended to place arbitration agreements upon the same footing as other contracts and to override the judiciary's longstanding refusal to enforce agreements to arbitrate." *Bd. of Managers of Courtyards at Woodlands Condo. Ass'n v. IKO Chi., Inc.*, 697 N.E.2d 727, 732 (Ill. 1998). The Supreme Court of Illinois has noted about the IUAA, that "[t]he chief effect and benefit of this Act is that it grants legal enforceability to arbitration agreements to settle future, as well as existing disputes. It empowers courts of general jurisdiction, upon application of a party, to compel or stay arbitration, or to stay court action pending arbitration." *Flood v. Country Mut. Ins. Co.*, 242 N.E.2d 149, 151 (Ill. 1968). The IUAA provides, in relevant part, that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable save such grounds as exist for the revocation of any contract[.]" 710 Ill. Comp. Stat. 5/1 § 1.

In *Melena*, the Supreme Court of Illinois held that mandatory arbitration agreements in the employment context are enforceable contracts under Illinois law and are to be construed

21

pursuant to the common law principles of Illinois contract law. 847 N.E.2d at 109. "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract. . . . By continuing her employment with [the defendant], plaintiff both accepted the offer and provided the necessary consideration. As [the defendant] correctly notes, under Illinois law, continued employment is sufficient consideration for the enforcement of employment agreements. *Id.*

Here, there are not one, but two enforceable agreements to arbitrate: Johnson's Employment Agreement and the more specific Agreement to Arbitrate. (R. 38-1, Defs.' Mot., Ex. B, Empl'y. Agree.; R. 38-1, Defs.' Mot., Ex. A, Arbit. Agree.) Both agreements were entered into as conditions of Johnson's employment, as was Defendants' DRP, which is referenced in Defendants' Agreement to Arbitrate. (R. 41, Pl.'s Resp. at 2; R. 38-1, Defs.' Mot., Ex. A, Arbit. Agree.; R. 38-1, Defs.' Mot., Ex. B, Empl'y.. Agree.; R. 38-1, Defs.' Mot., Ex. C, DRP.) Johnson admits that he entered into all three of these agreements as conditions of his employment. (R. 41, Pl.'s Resp. at 2, 7-8.) Johnson also admits that as a condition of being considered for employment by Defendants, his Employment Application included an agreement to arbitrate. (*Id.* at 2.) This constitutes an offer and acceptance, as well as valid mutual consideration to support enforcement of the Agreement. *See Melena*, 847 N.E.2d at 111.

Johnson's arbitration agreements state that the duty to arbitrate covers *all* disputes between Johnson and Defendants, including those related to all employment application and discharge issues contained in the complaint. (R. 38-1, Defs.' Mot., Ex. A, Arbit. Agree.; R. 38-1, Defs.' Mot., Ex. B, Empl'y.. Agree.) Similarly, Defendants' DRP clearly defines arbitral disputes as those related to the employment application process and decision, the terms and condition of Johnson's employment, and the discharge of his employment. (R. 38-1, Defs.'

22

Mot., Ex. C, DRP). Under these facts, the various agreements to arbitrate between Johnson and Orkin cover all claims arising from Johnson's employment, and thus all claims in his complaint. These claims are within the scope of the Agreement to Arbitrate.

An agreement that requires arbitration of statutory claims is generally enforceable under the FAA. *Gilmer*, 500 U.S. at 26. This includes claims of retaliation and discrimination brought pursuant to Title VII. *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 362 (7th Cir. 1999). In *Koveleskie*, the Seventh Circuit conclusively found a "clear congressional intent to encourage arbitration of Title VII . . . claims, not to preclude such arbitration." *Id.* at 365 (quoting *Seus v. John Nuveen & Co.*, 146 F.3d 175, 183 (3d Cir. 1998) (internal quotation marks omitted)). Arbitration of statutory rights is proper because "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Mitsubishi Motors Corp.*, 473 U.S. at 628. "So long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Gilmer*, 500 U.S. at 26. Thus, an agreement to arbitrate a statutory claim is enforceable so long as a party may effectively vindicate his statutory rights in arbitration. Johnson's causes of action concern his hiring, employment, and termination with Defendants pursuant to Title VII and the IHRA, and therefore Johnson's claims fall squarely within the scope of his arbitration agreements and the related DRP. *See Tinder*, 305 F.3d at 736; *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 929 (N.D. Ill. 2005).

Johnson attempts to avoid mandatory arbitration by claiming that his Agreement to Arbitrate was "procedurally and substantively unconscionable" and induced by fraud. (R. 41,

Pl.'s Mot. at 6-9.) Pursuant to § 4 of the Act, claims relating to fraud in the making of an arbitration agreement are justiciable in federal court, but the Act precludes the court from adjudicating claims of fraud in the inducement of the contract generally; such claims are nonjusticiable. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it."); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 811 (7th Cir. 2011) ("The only relevant inquiry at this stage is whether the arbitration clause *itself* was fraudulently induced—that is, whether there was fraud that goes to the 'making' of the agreement to arbitrate."). If the Court is satisfied that the parties agreed to arbitrate, it must promptly compel arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. The Supreme Court has held that employment contracts, except for those involving workers engaged in transportation, are covered by the broad sweep of the FAA. *Circuit City Stores*, 532 U.S. at 119.

Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" come to the Court in two variations. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (quoting 9 U.S.C. § 2). One type specifically challenges the validity of the agreement to arbitrate itself. *Id.* The other challenges the contract as a whole—either on a basis that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the basis that the whole contract is invalid due to the illegality of one of the contract's provisions. *Id.* The Supreme Court has held "that only the first type of challenge is relevant to a court's determination [of] whether the arbitration agreement at issue is enforceable. That is because § 2 states that a 'written provision' 'to settle by arbitration

24

a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the

contract in which it is contained." *Rent-A-Center, W.*, 130 S. Ct. at 2778 (quoting 9 U.S.C. § 2;

citing *Prima Paint*, 388 U.S. at 403-04; *Buckeye*, 546 U.S. at 444–446; *Preston v. Ferrer*, 552

U.S. 346, 353-54 (2008)). Therefore, a party opposing enforcement who challenges a particular

provision of the contract, or to the contract as a whole, will not foreclose a court from enforcing

a specific agreement to arbitrate. *Rent-A-Center, W.*, 130 S. Ct. at 2778.

Johnson argues that Defendants "intentionally refused to provide, disclose, or make

available for review the *addendum* titled Dispute Resolution Policy, which contained additional

key terms, provisions, or clauses to the Agreement to Arbitrate and Employment Application."

(R. 41, Pl.'s Mot. at 7.) Johnson complains that this withholding prevented him from

understanding the Arbitration Agreement in its entirety. *(Id.)* The record reflects, however, that

Johnson never requested the DRP, but instead requested his personnel file three times—one time

as an applicant for employment, once four days after he was hired, and then again five months

after his discharge. *(Id.* at 2-3.) Defendants complied with Johnson's last two requests by

producing his personnel file, which contained his Employment Application, Agreement to

Arbitrate, and Employment Agreement, among other documents, but not Defendants' Employee

Handbook or DRP. *(Id.)* Johnson's duty to arbitrate his claims is apparent on the face of his

Employment Application, Agreement to Arbitrate, and Employment Agreement with

Defendants. (R. 38-1, Defs.' Mot., Ex. A, Arbit. Agree.; R. 38-1, Defs.' Mot., Ex. B, Empl'y..

Agree.; R 38-1, Defs.' Mot., Ex. C, DRP.)

Johnson also asserts that Defendants were not mutually bound to arbitrate their claims.

(R. 41, Pl.'s Mot. at 8.) Johnson cites his Employment Agreement, which clearly states that

Defendants and their parent company, Rollins, Inc., were required to arbitrate "any disputes" related to Johnson's employment with Defendants, the only exception being Defendants' right to "seek a restraining order, injunction as described, or other equitable relief." (R. 38-1, Defs.' Mot., Ex. B, Empl'y.. Agree. ¶ 5.) Any dispute as to mutuality is clarified by reference to the parties' Agreement to Arbitrate, which contains clear, mutual promises to arbitrate:

> I desire, *as does the Company*, to resolve any disputes regarding or arising from my employment in an expeditious and economical fashion. I recognize and agree, *as does the Company*, that arbitration of such disputes through binding arbitration is in the best interest of *both parties*. Therefore, *in consideration of employment and the mutual promises, covenants, and conditions set forth in this Agreement*, I agree, *as does the Company*, to abide by the Company's Dispute Resolution Policy and to arbitrate any dispute, claim or controversy regarding or arising out of my employment. . .

(R. 38-1, Defs.' Mot., Ex. A, Arbit. Agree. ¶ 2) (emphasis supplied). Thus it is clear that both parties—Johnson and Orkin—were mutually bound by the Arbitration Agreement.

In addition, Johnson claims that the Agreement to Arbitrate contained an "element of surprise" because the Agreement did not explain that, by signing it Johnson was waiving his right to a trial. (R. 41, Pl.'s Mot. at 8.) However, the Agreement to Arbitrate is unambiguous in this regard. It states: "I specifically understand that by agreeing to arbitrate, *I waive any right to a trial* by a judge or jury in favor of having such disputes resolved by arbitration." *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000) ("The unambiguous contract controls over contrary allegations in the plaintiff's complaint."); (R. 38-1, Defs.' Mot., Ex. A, Arbit. Agree. ¶ 4) (emphasis supplied). Furthermore, in Illinois a party to a contract is charged with knowledge of and assent to a signed agreement. *Faulkenberg, LP*, 637 F.3d at 809 (citing *Melena*, 847 N.E.2d at 109). Thus, Johnson's "surprise" argument is to no avail.

Johnson also asserts that his agreements to arbitrate were "inherently unconscionable due to the unequal bargaining power of the parties." (R. 41, Pl.'s Mot. at 8.) This argument has been rejected by both Illinois State courts and federal courts. In *Melena*, the Supreme Court of Illinois rejected the argument that because an agreement was offered on a "take-it-or-leave-it" basis it was unenforceable. 847 N.E.2d at 109-10. The court further noted "the futility surrounding arguments grounded in the doctrine of unconscionability," and stated that "Illinois courts have been reluctant to hold the inequality in bargaining power alone suffices to invalidate an otherwise enforceable agreement." *Id. See also Koveleskie*, 167 F.3d at 366 ("[The plaintiff] next argues that because she was required to sign the Form U-4 as a condition of her employment, the arbitration clause created an unconscionable contract of adhesion and should be voided. We reject this argument, as have numerous courts, including the Supreme Court."); *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905-07 (7th Cir. 2004) (applying Illinois law) (rejecting argument that arbitration agreement was unconscionable); *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) (applying Illinois law) (rejecting argument that agreement was contract of adhesion due to the disparity in bargaining power); *ChampionsWorld, LLC v. U.S. Soccer Federation, Inc.*, — F. Supp. 2d— , Case No. 06 C 5724, 2012 WL 3580536, at 28-29 (N.D. Ill. 2012) (applying Illinois law) (rejecting claims of procedural and substantive unconscionability); *Williams Jo-Carroll Energy, Inc.*, 980 N.E.2d 566, 571 (Ill. App. Ct. 2d Dist. 2008) ("However, just because a contract is prepared by a party in a superior bargaining position, without allowing the other party to negotiate any terms, does not mean that an included arbitration clause is unconscionable. Rather, some fraud or similar wrongdoing must be shown to invalidate such a provision as unconscionable.") (internal citation omitted); *Kewanee Prod.*

*Credit Ass'n v. G. Larson & Sons Farms, Inc.*, 496 N.E.2d 531, 534 (Ill. App. Ct. 3d Dist. 1986) ("Furthermore, duress does not exist where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances. Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated on the basis of duress.").

Johnson further asserts that because Defendants' DRP permitted him to file a Charge that was "subject to the exclusive jurisdiction of a state or federal agency," Defendants are now barred from arbitrating Johnson's race discrimination and retaliation claims. (R 38-1, Defs.' Mot., Ex. C, DRP; R. 41, Pl.'s Mot. at 10.) This interpretation ignores the fact that after the EEOC's and IDHR's administrative proceedings are completed, neither agency retains any "exclusive jurisdiction," and the claims are then subject to the jurisdiction of either a federal court or an arbitrator. 42 U.S.C. § 2000e-5(f)(1); 775 Ill. Comp. Stat. 5/8-111. Thus, the Court finds that it must compel arbitration of the parties' disputes because the issues at hand are subject to valid, clear, and unambiguous agreements to arbitrate. *See Zurich*, 417 F.3d at 690.

## IV. Dismiss or stay

The FAA provides that once the Court ascertains that arbitration is to be compelled, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Defendants argue that notwithstanding the language of § 3, the Court should dismiss Johnson's complaint because all claims asserted therein are subject to arbitration. (R. 38, Defs.' Mot. at 14-15). Defendants assert that in such circumstances, courts will routinely dismiss a suit rather than stay it. (*Id.*) Johnson asserts—citing the statutory language—that a stay is the proper and appropriate action to take on his complaint if the Court decided to compel arbitration. (Pl.'s Mot. at 11.)

There is a growing trend among courts favoring dismissal of a case when all of the claims contained therein are subject to arbitration—resulting in "a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011). Although the Seventh Circuit has yet to hold outright that dismissal of a suit is appropriate when all claims are subject to arbitration, it has affirmed district courts' dismissals of suits when a court finds that all of the claims are arbitrable. *See, e.g., Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002). In addition, the weight of authority from jurisdictions across the Nation supports the proposition that a court is not precluded from dismissing a suit under the FAA. A court should dismiss a case when all the

issues before it are arbitrable. *Escobar-Noble*, 680 F.3d at 126 ("The essence of the district

court's ruling was to grant the [defendant] the bargained-for protection provided by the

arbitration clause. The court should, therefore, have entered an order compelling arbitration and

*either staying or dismissing the action.*") (emphasis supplied); *Soto-Fonalledas v. Ritz-Carlton*

*San Juan Hotel Spa & Casino*, 640 F.3d 471, 473 (1st Cir. 2011) (affirming the district court's

granting of a motion to compel arbitration and to dismiss "on the grounds that the dispute was

covered by an arbitration agreement"); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975

(6th Cir. 2009) ("[The plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3

requires district courts to stay suits pending arbitration rather than dismiss them. We have

already rejected that argument."); *Poteat v. Rich Prods. Corp.*, 91 F. App'x 832, 835 (4th Cir.

2004) ("Accordingly, we vacate the court's order denying [the defendant's] motion to compel

and remand with instructions to grant the motion to compel arbitration and dismiss the action.");

*Choice Hotels Int'l*, 252 F.3d at 709-10 ("Notwithstanding the terms of § 3, however, dismissal

is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Fedmet Corp. v.*

*M/V BUYALKA*, 194 F.3d 674, 678 (5th Cir. 1999) ("If all of the issues raised before the district

court are arbitrable, dismissal of the case is not inappropriate."); *Hensel v. Cargill, Inc.*, 198 F.3d

245, at *4 (6th Cir. 1999) ("Under § 3 of the FAA, if any separate claim is referable to

arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation

in which all claims are referred to arbitration may be dismissed."); *Bercovich v. Baldwin Sch.,*

*Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998) ("However, a court may dismiss, rather than stay, a

case when all of the issues before the court are arbitrable."); *Arnold v. Arnold Corp.*, 920 F.2d

1269, 1275 (6th Cir. 1990) (stating that it was not "error for the district court to dismiss the

complaint" after ordering arbitration); *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) ("The district court acted within its discretion when it dismissed [the plaintiff's] claims" because the broad arbitration clause encompassed all of the plaintiff's claims."); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *see also Denari v. Rist*, No. 10-cv-2704, 2011 WL 332543, at *11 (N.D. Ill. Mar. 24, 2011) ("And because this opinion resolves all of the issues raised in Plaintiff's complaint and determines that those issues must be submitted to arbitration, dismissal is the appropriate disposition."); *Reineke*, 2004 WL 442639, at *5 ("Because all of the claims raised in Plaintiff's complaint are subject to arbitration, the court grants Defendant's motion to dismiss and to compel arbitration."); *Dalope v. United Health Care of Ill.*, No. 03 C 8918, 2004 WL 2325688, at *2 (N.D. Ill. Oct. 8, 2004) ("Because all issues raised in this action must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. . . . Although the Seventh Circuit has not directly addressed this issue, the weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (internal quotation marks omitted); *Medina v. Hispanic Broad. Corp.*, No. 01 C 2278, 2002 WL 389628, at *4 (N.D. Ill. Mar. 12, 2002) ("Although the FAA does not explicitly provide that a case subject to arbitration can be dismissed, this court agrees with other courts that have concluded that an action may be dismissed when all the claims within it are subject to arbitration."); *Hostmark Investors Ltd. v. Geac Enter. Solutions, Inc.*, No. 01 C 8950, 2002 WL 1732360, at *3 (N.D. Ill. July 26, 2002) ("Although the Seventh Circuit does not appear to have addressed the issue, the weight of authority clearly supports dismissal of the case when all of the

issues raised in the district court must be submitted to arbitration."). The Court concludes that dismissal is the appropriate remedy here because the arbitration agreements are broad enough to cover all of Johnson's claims, and therefore retaining jurisdiction and staying this action would only serve to waste judicial resources.

## CONCLUSION

Defendants' motion to compel arbitration (R. 38) is GRANTED. Orkin Pest Control and Orkin Exterminating, Inc. are dismissed from this suit as they are not proper Defendants, nor are they subject to arbitration. The Court compels the parties to submit to arbitration in accordance with their various arbitration agreements. Because all of the claims in this suit are subject to arbitration, leaving the Court with nothing left to do, the suit is dismissed. Johnson's motion to stay and to strike Defendants' motion to dismiss or compel arbitration (R. 41) is DENIED as moot. The Clerk of the Court is ordered to dismiss this case.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

Dated: March 6, 2013